**Goldie R. TENER, Plaintiff-Respondent,**

v.

**John R. HILL, Defendant-Appellant.**

**No. 8374.**

Springfield Court of Appeals.

Missouri.

Aug. 19, 1965.

Robert E. Seiler, K. J. Elliff, Seiler, Blanchard & Van Fleet, Joplin, for defendant-appellant.

William H. Burden, Joplin, Edward V. Sweeney, Monett, for plaintiff-respondent.

HOGAN, Judge.

This action to recover for personal injuries and property damage arose out of a collision which occurred at the intersection of 23rd and Cleveland Streets in Joplin, Missouri, at 11:55 A.M. on April 30, 1962. Upon trial, a jury found the issues for the plaintiff and assessed her damages at the sum of $1,850.00. The defendant has appealed.

Both streets were gravel surfaced at the time of the casualty; neither was considered a superior or favored highway, and there was no form of traffic control at the intersection. Very generally, Cleveland Street runs north and south and 23rd runs east and west. The intersection is irregularly shaped, however, first, because 23rd Street intersects Cleveland on the east at a point north of its intersection on the west, and second, because 23rd Street "fans out," somewhat like the base of a triangle, at both the east and west entrances to the intersection. The appellant describes the intersection by saying that 23rd Street crosses Cleveland at an angle, jog or "S" curve, so that the course of 23rd Street shifts to the south about 18 feet over a distance of about 75 feet, and because of this shift the northeast-southwest axis of the intersection is longer than the northwest-southeast axis, being approximately 70 feet for the former and approximately 35 feet for the latter. The respondent does not describe the intersection except by reference to the exhibits. The irregularity of the intersection may be described by saying that the projected center line of 23rd Street east of the intersection is 15 feet north of the projected center line of 23rd Street west of the intersection; and, while 23rd appears to have been laid out as a 22-foot street east of the intersection and a 17 to 18-foot street west of the intersection, the "fan out" is such that at the east entrance to the intersection 23rd Street measures approximately 60 feet from north to south, and at the west entrance it measures some 45 feet from north to south. Cleveland is about 22 feet wide from east

to west south of the area of intersection, and some 17 feet wide north of it. In candor, the shape of the intersection and the course of the vehicles' travel defy accurate verbal description, and we therefore attach a diagram[1] in an attempt to

1. Somewhat modified from Defendant's Exhibit "C," a diagram prepared by a registered surveyor, and received in evidence by agreement.

make the opinion comprehensible. We must add that at the time in question there was shrubbery growing along the property line at the southeast corner of the intersection, so that the view of the northbound traveler on Cleveland was blocked to the east and that of a westbound traveler on 23rd Street was blocked to the south.

Only the parties testified as eyewitnesses to the accident. The nature and extent of the plaintiff's injuries are not in issue here. Mrs. Tener was traveling west along 23rd in a 1954 Mercury owned by her but being driven by her brother, Mr. George Van, who did not testify. Mrs. Tener and Mr. Van had run some errands and attended to some family business, and they were on their way home, apparently for "lunch." It was stipulated that the plaintiff's vehicle, both as it approached the area of intersection and at the time of collision, was being driven in the tracks or ruts indicated on the diagram. It was an essential part of the plaintiff's trial theory that at the time of the accident the surface of 23rd Street was so rough that it was necessary to travel in the tracks, and that it was necessary to follow the tracks through the intersection because the manhole cover (in the northwest part of the intersection) protruded above the surface so far that an automobile could not safely pass over it. In support of this theory, the plaintiff adduced evidence that 23rd Street east of the intersection was "full of holes and * * * awful rough," and Mrs. Tener testified that the manhole cover "stuck up about that far out of the ground," indicating the length of her hand. On this aspect of the case, the plaintiff also had the testimony of a witness who lived nearby that "back at that time [of the casualty]" the manhole cover protruded some four or five inches above the surface of the street. There is at least some record evidence indicating that it had become customary to follow the tracks through the intersection, though, as we say, the necessity for following the tracks is a matter sharply contested by the defendant.

In any event, as the plaintiff related the accident, Mr. Van was proceeding westerly in the tracks, and as the plaintiff's vehicle "went into where the wreck was" the speed of plaintiff's vehicle was about five miles an hour. Mrs. Tener looked both to the right and left but saw nothing. While her testimony is somewhat ambiguous as to whether the intersection was literally a "blind" intersection to the south because of the shrubbery on the southeast corner, she did say that there was "hedge all around the place," and that in order to see to the south "you have to be back a little ways from the intersection."

The plaintiff did not, so far as we can determine, actually locate the position of her vehicle in the intersection when the collision occurred. While one of the photographs she introduced in evidence seems to have been designed to show that the right front side of her vehicle was about one foot south of the manhole cover, her trial testimony is not correlated with the photograph. Mrs. Tener did introduce a photograph of her automobile showing the initial point of contact as having been at the front of the left door of her car, a two-door sedan, but in adducing a description of the accident counsel contented himself with Mrs. Tener's statement that, as she looked "straight ahead, west," she " * * * just heard a terrific blow and we were hit and I felt the impact * * * [and] the car went up on two wheels and then bounced back."

The plaintiff also introduced portions of a pre-trial deposition given by the defendant in which he had said that he saw plaintiff's vehicle when it was "just east, coming right into the intersection," and that the front of plaintiff's vehicle was then "practically north * * * [perhaps] * * * two or three feet east" of the telephone pole on the southeast corner. The defendant also stated in his deposition that Mrs. Tener's vehicle entered the intersection first.

The defendant, a former superintendent of streets, lived on the southeast corner of the intersection. It was his shrubbery which was growing along the property line, principally on the south side of 23rd Street east of the intersection. Mr. Hill's version of the accident was that he had backed out of his garage, "approximately 80 feet south of the intersection," and had gone north on Cleveland toward the intersection with the intention of turning right, or east. As he approached the intersection, Mr. Hill was at all times on the east side of the center line, and as he came to the area of intersection the shrubbery "was pretty dense and you just couldn't hardly see through it." As we understand his testimony, the defendant claimed that he approached the intersection with the right side of his car about two feet from the east edge of the street, and he "just started to make the turn [to the right, to go east on the south side of the east-west street] and * * * this car was coming down on my side of the street." Mr. Hill was traveling "I imagine 12 or maybe 15 [miles per hour]" and applied his brakes as soon as he saw the Tener vehicle, but he succeeded only in stopping "just about the time the impact occurred," so "[his] left front fender" collided with "the left side of their car, about the middle." The Tener vehicle, according to Mr. Hill, "traveled on from the impact in a north and westerly direction," and stopped so the "front end of his car was about even with the manhole."

Being asked to recount the accident upon cross-examination, the defendant was shown to have testified by deposition that he was some 15 to 20 feet south of the intersection when he first saw the Tener vehicle; and then defendant repeated that he applied his brakes as soon as he saw the plaintiff's car.

As we have indicated, the defendant strongly controverted the plaintiff's assertion that it was at all necessary to drive in the tracks or ruts on 23rd Street. It is unnecessary to detail all the evidence on this point, but the defendant claimed and adduced substantial proof to show that 23rd Street was smooth enough for a vehicle to be driven anywhere upon the roadway, and that the manhole cover did not protrude far enough above the ground to require a vehicle to be driven around it rather than over it. The defendant also had the evidence of patrolman Charles Brewer, who had investigated the accident. Patrolman Brewer, without objection, located the point of impact as being a point in the southeast quadrant of the intersection (indicated as point "C" on the diagram) 10 feet 9 inches northwest of the telephone pole in the southeast corner of the intersection, and Mr. Brewer also testified that on the date of the accident it was possible to proceed directly over the manhole. Other more particular facts will be noted in the course of the opinion.

■ First of all, we must consider the respondent's motion to dismiss the appeal because the appellant has not made a "fair and concise" statement of the facts in his brief, as required by Rule 83.05(c)[2]. We believe that the respondent's criticism of the appellant's statement is largely unjustified; certainly there is no basis for saying, as the respondent claims, that the appellant has misrepresented the facts or grossly distorted them. We consider that the appellant's statement adequately presents the facts, particularly when it is taken with the respondent's additional statement. We will consider the appeal on its merits. Fitzpatrick v. St. Louis-San Francisco Railway Co., Mo., 300 S.W.2d 490, 493 [1, 2].

■ The appellant's first assignment, which is rather elaborately made, is that the evidence shows plaintiff's driver to have been guilty of contributory negligence, and, since the plaintiff was engaged in a joint

**2.** All references to statutes and rules are to RSMo (1959), V.A.M.S. and V.A.M.R., unless otherwise specifically noted.

venture with her driver, she is also guilty of contributory negligence. We agree that the plaintiff and Mr. Van were co-venturers on this particular trip, and that any negligence on the driver's part is imputable to Mrs. Tener. In fact, that premise is not questioned and requires no discussion. It does not follow, however, that Mr. Van was guilty of such contributory negligence as to bar plaintiff's recovery.

The principal thesis advanced by the appellant in support of his argument that the plaintiff was guilty of negligence "as a matter of law" is that her vehicle approached and entered the intersection on the south, left or wrong side of the road in violation of Section 304.015, par. 2, which provides that, with certain specific exceptions, a vehicle shall be driven upon the right half of the roadway upon all public roads or highways of sufficient width.[3] The appellant maintains that the plaintiff, at least by imputation, is guilty of absolute negligence because the cases say any violation of Section 304.015, par. 2, is negligence "per se." To support this argument, the appellant cites Justice v. Malin, Mo., 336 S.W.2d 77, 79–80 [1], and Foster v. Sacco, Mo.App., 343 S.W.2d 171, 175–176 [4], both of which indeed announce the general proposition that the failure of an operator of a moving vehicle to drive upon the right half of the roadway in violation of the statute is negligence per se.

This contention is not without substance. Had the plaintiff's driver approached the east entrance to the intersection on the north or right side of 23rd Street, his lateral view to the south on Cleveland would have been extended; undoubtedly by approaching

and entering the intersection with his vehicle on or partially on the south side of the road, the plaintiff's driver increased the likelihood that the path of his vehicle would converge with that of a vehicle approaching the intersection from the south, and therefore increased the likelihood of a collision. Even so, we cannot say, in this case, that the trial court should have directed a verdict for the defendant. Without entering into an abstract discussion of the relative nature of the expressions "negligence per se" and "negligence as a matter of law," as applied to statutory violations,[4] it is sufficient to say here that there are valid excuses for failure to comply with Section 304.015, par. 2, other than those enumerated in Miles v. Gaddy, Mo., 357 S.W.2d 897, 902 [4], as the defendant argues. Our courts have repeatedly held that Section 304.015, par. 2, and similar statutes do not require a vehicle to make use of a part of the road which is in fact impassable and unavailable for travel,[5] and, likewise, a motorist may be excused from a statutory violation where he deviates from the prescribed course of travel in order to avoid a dangerous obstruction. Lix v. Gastian, Mo.App., 261 S.W.2d 497, 501 [9]. Here it was the plaintiff's theory, which she developed with at least some positive proof, that her driver was required to follow the tracks because that part of 23rd Street north of the center line and east of the intersection was impassable, and that he drove south of the manhole cover because it protruded above the surface and constituted a dangerous obstruction. The jury had before it several descriptions of the condition of the surface. In our view of the matter, it was a jury question whether the plain-

3. It may also be noted that Section 304.016, par. 4, subpar. (2), required plaintiff's vehicle to be driven to the right, since the plaintiff was approaching within 100 feet of an intersection when the view was obstructed.

4. For which see Rice v. Allen, Mo., 309 S.W.2d 629, 631 [1]; Richardson et al., Legal Excuse and Unavoidable Accident, 4 Mo.Bar C.L.E. Series, § 12.7, pp. 162–

168 (1961); Prosser, Torts, § 34 pp. 158–159 (2d ed. 1955).

5. Moss v. Stevens, Mo., 247 S.W.2d 782, 785 [3, 4]; Bunch v. Crader, Mo.App., 369 S.W.2d 768, 773 [7, 8]; Darnell v. Ransdall, Mo.App., 277 S.W. 372, 373 [1, 2]; Harmon v. Fowler Packing Co., 129 Mo.App. 715, 719–720, 108 S.W. 610, 611. See 60 C.J.S. Motor Vehicles § 282c p. 660, and § 356, p. 844.

tiff's driver followed the tracks into and through the intersection out of necessity or for considerations of safety. Upon the record presented, neither we nor the trial court could prescribe an exact path or course of travel which the plaintiff's driver was obliged to follow—as defendant seems to argue—and we must rule this point against the defendant.

The appellant further maintains that the plaintiff's driver, and hence the plaintiff, was contributorily negligent as a matter of law because he failed to see the defendant's vehicle prior to the time of impact, because he did not maintain an effective lookout, because he took no evasive action after seeing the defendant's vehicle, and because he failed to give a warning of his approach. Again, these contentions are not altogether without substance. The difficulty with the defendant's position in this case is that the record itself is ambiguous in many respects, and a plaintiff's contributory negligence is a jury question, unless the only reasonable conclusion is that plaintiff was negligent and that his negligence was a proximate cause of his injury. Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 19 [1]; Kickham v. Carter, Mo., 314 S.W.2d 902, 908–909 [8] [9]. We have no doubt that Mr. Van was obliged to keep a lookout as he approached and entered the intersection, as Douglas v. Whitledge, Mo. App., 302 S.W.2d 294, 299, holds, but the evidence does not establish *when* Mr. Van could have seen the defendant approaching the intersection, or even that he could have seen him at all, had he been looking. The plaintiff herself stated that the shrubbery on the southeast corner of the intersection blocked the view (to the south on Cleveland) "some—a lot, yes." Her testimony is conflicting in itself as to whether a vehicle going west on 23rd Street "[had] to be back a little ways from the intersection," or "up past the telephone pole," to have a clear view of Cleveland from the north. Mr. Hill's description of the shrubbery was that "* * * it was pretty dense and you just couldn't hardly see through it." So,

the record leaves us in doubt whether the view of plaintiff's driver was completely obstructed, or only partially so, and if the view was only partially obscured, the point at which Mr. Van should have seen Mr. Hill approaching. In the absence of evidence that in the exercise of the highest degree of care Mr. Van should have seen the defendant sooner than he did, we cannot hold him contributorily negligent as a matter of law in failing to maintain a careful lookout. O'Neill v. Claypool, Mo., 341 S.W.2d 129, 135 [11, 12]; Levin v. Caldwell, Mo., 285 S.W.2d 655, 659 [3]. The defendant also complains that plaintiff's driver took no evasive action to avoid the collision, but Mr. Van was, after all, the favored driver, and the evidence is equivocal as to when he could have become aware of impending danger. As we also pointed out in Douglas v. Whitledge, supra, 302 S.W.2d at 303 [7], Mr. Van's duty to take evasive action did not arise simply on the appearance of another vehicle; it arose only when he saw or realized, or should have seen or realized, in the exercise of the highest degree of care, that there was danger of a collision. In the absence of evidence that this duty arose at a time when action would have been effective, we cannot say Mr. Van was guilty of contributory negligence which barred the plaintiff's recovery. Fuzzell v. Williams, Mo.App., 288 S.W.2d 372, 377, and see Politte v. Miller, Mo.App., 301 S.W.2d 839, 843, where knowledge of the immediate approach of another vehicle came too late for effective action. Possibly, as the defendant suggests, the plaintiff's driver had created a sufficient hazard to approaching traffic that he should have given a warning by sounding his horn, Bunch v. Crader, supra, 369 S.W.2d at 774 [14–17], but again we cannot say that he was contributorily negligent as a matter of law in failing to do so. There was evidence that Mr. Hill had visual notice of the approach of plaintiff's vehicle, possibly in time to stop; since that is true, it simply became a jury question whether a warning would have given a more effective notice of the approach of plaintiff's vehicle and was

therefore a proximate cause of the casualty. Steigleder v. Lonsdale, Mo.App., 253 S.W. 487, 489–490 [2] [3]. In our view of the case, we cannot, at least for any reason assigned by the appellant, say that the plaintiff's driver was contributorily negligent as a matter of law so as to bar the plaintiff from recovery.

The defendant's second general assignment of error is directed to plaintiff's Instruction No. 1. The essence of his complaint is that the instruction imposes a higher or more burdensome duty upon the defendant than the law requires and, as the defendant phrases the matter, "ignored the real issue tried." The plaintiff submitted her case upon excessive speed and failure to yield the right-of-way. Instruction No. 1, of which complaint is made, first abstractly advised the jury that the driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has already entered the intersection from a different highway, provided there is no form of traffic control at the intersection, and that when two vehicles enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the driver of the vehicle on the right. The instruction then continued:

"* * * Therefore you are instructed that if you find and believe from the preponderance of the evidence that on the 30th day of April, 1962, one George Van was driving plaintiff's automobile westward on 23rd Street * * * and if you find that the said George Van as he approached, entered and proceeded through the intersection of 23rd Street and Cleveland Street was exercising the highest degree of care, and *if you find that plaintiff's automobile,* driven by the said George Van, *entered said intersection before defendant's vehicle entered said inter-*

*section, or if you find that said vehicles entered said intersection at approximately the same time, then you are instructed that it was the duty of the defendant to yield the right-of-way at said intersection to plaintiff's automobile, and if you find that the defendant failed to do so then you are instructed that the defendant was guilty of negligence,* and if you find that as a direct result of such negligence of the defendant his vehicle and plaintiff's vehicle collided and if you find that as a direct result of said collision plaintiff was injured and her automobile was damaged, then your verdict will be in favor of plaintiff and against the defendant on plaintiff's petition, provided you find that plaintiff was in the exercise of ordinary care for her own safety." (Our emphasis.)

We consider the defendant's criticism to be well taken. We agree that Instruction No. 1 permits the jury to find that there had been a breach of the defendant's duty to act without requiring the jury to find the basic fact upon which his duty to act rested, that is, that he knew or should have known of the danger or imminence of a collision between the two vehicles. As was said long ago in the case of Stakelback v. Neff, Mo. App., 13 S.W.2d 575, 577 [1], the law does not impose "the duty upon the driver of an automobile, upon approaching and entering an intersecting street, to stop, decrease the speed of, or change the course of, his car, merely because he sees another automobile in the street ahead of him. To the contrary, such duty to act would clearly not arise, unless the exercise of due care upon the part of the driver would lead him to believe that otherwise a collision would occur. * * *" Plaintiff's Instruction No. 1 in this case not only has the vice discussed in the Stakelback case, supra, and the cases following it,[6] but, having

6. Nydegger v. Mason, Mo., 315 S.W.2d 816, 819–820 [2, 3]; Douglas v. Whitledge, supra, 302 S.W.2d at 303 [7]; Burke v. Renick, Mo.App., 249 S.W.2d 513, 517 [7]; Greenwood v. Bridgeways, Inc., Mo. App., 243 S.W.2d 111, 114 [4, 5]; Devoto v. St. Louis Pub. Serv. Co., Mo.App., 238 S.W.2d 66, 72 [6].

**434**

thus erroneously stated the law, the instruction wholly deprives the jury of its function of deciding whether or not the defendant's conduct constituted negligence.

Though it may be only stating the same matter in another way, we think the instruction is erroneous upon the other ground suggested by the defendant, that is, that it ignores or at least forecloses the jury's consideration of the qualifying or exculpatory circumstances shown by the evidence. While the violation of Section 304.021, pars. 1 and 2, may constitute negligence per se, still there may be valid excuses for failing to observe the statute, or circumstances which qualify the duty imposed by these two paragraphs. Lay v. McGrane, Mo., 331 S.W.2d 592, 599 [8]; MacArthur v. Gendron, Mo.App., 312 S.W.2d 146, 150 [7–10]. This is not a case in which there was no conflict of evidence concerning the circumstances of the collision; even if it were conceded that the manhole cover constituted an obstruction in the path of the plaintiff's vehicle, in the northwest corner of the area of intersection, the testimony was in direct conflict whether the condition of 23rd Street east of the intersection was such that it was necessary for Mr. Van to approach on the south or left side of the street. Instruction No. 1 wholly excludes from the jury's consideration the qualifying circumstance that the defendant's vision to the east was obscured and that he had no reason to anticipate that Mr. Van would *approach* the intersection on the south or left side of 23rd Street, even if it were necessary to avoid the manhole cover once he started to cross; and, in the absence of knowledge or reasonable apprehension that an automobile proceeding westwardly along 23rd Street would not approach the intersection on the north side, the defendant was not required to anticipate the presence of the plaintiff's vehicle upon the south side of the street into which he was preparing to turn. Moore v. Fitzpatrick, Mo.App., 31 S.W.2d 590, 591–592 [4, 5]. In short, the instruction ignores the fact that had plaintiff been pursuing the course of travel ordinarily to be anticipated, the paths of the two vehicles would not have converged. We consider the giving of Instruction No. 1 to have been prejudicially erroneous, and for that reason the cause must be reversed and remanded for a new trial. It is so ordered.

RUARK, P. J., and STONE, J., concur.