Lillian K. COHEN et al., Plaintiffs-Respondents,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Defendant-Appellant.

No. 33235.

St. Louis Court of Appeals.

Missouri.

July 15, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 15, 1969.

Application to Transfer Denied Nov. 10, 1969.

Fordyce, Mayne, Hartman, Renard & Stribling, P. Terence Crebs, St. Louis, for defendant-appellant.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Donald W. Bird, Francis M. Oates, St. Louis, for plaintiffs-respondents.

HERBERT K. MOSS, Special Judge.

This is a suit by plaintiff-insured to recover certain hospital and medical expenses from defendant-insurer, under a Family Comprehensive Medical Expense Policy; also for statutory damages for vexatious refusal to pay, and for attorney's fees. The cause, tried to the court, resulted in a judgment for plaintiff and against defendant in the sum of One Thousand Two Hundred and Seventy-nine Dollars and Seventy-five Cents ($1,279.75) plus ten per cent (10%) penalty in the sum of One Hundred and Twenty-seven Dollars and Ninety-eight Cents ($127.98) plus interest from April 1, 1966, to date of judgment, together with attorney's fees in the amount of One Thousand Five Hundred Dollars ($1,500.00). The trial court entered judgment for plaintiff on plaintiff's petition and against defendant on the latter's counterclaim for rescission. Defendant appeals from the judgment of the trial court.

Defendant's answer denied liability and affirmatively pleaded plaintiff in her application for insurance made misrepresentations and fraudulent statements with respect to prior treatment by a physician and also as to prior bodily or mental disease or disorder. Defendant counterclaimed for rescission of the insurance contract on the grounds plaintiff in her application for insurance, on which defendant

relied, made fraudulent misrepresentations that she had not been treated by a physician within the previous five years and had never had mental disease or disorder, all with the intention to deceive defendant.

We are first confronted with respondent-plaintiff's motion to dismiss for failure to comply with Supreme Court Rule 83.05, V.A.M.R., with respect to jurisdictional statement, statement of facts and "Points relied on". We rule timely appeal was taken from judgment entered on December 28, 1967. We further rule the statement of facts not so flagrantly deficient as to call for a penalty of dismissal, as respondent in its reply brief substantially corrected the omissions complained of. Tener v. Hill, Mo.App., 394 S.W.2d 425. Finally, we rule appellant's specifications of his points of error sufficient to enable the respondent to answer appellant's contentions and sufficient to enable this court to determine with reasonable certainty and effort what the issues on appeal are and what the appellant's position thereto is under Supreme Court Rule 83.05(e), V.A. M.R. Yates v. White River Valley Elec. Coop., Mo.App., 414 S.W.2d 808. We will consider this appeal on its merits.

Certain facts were well established in this case. On or about March 16, 1964, plaintiff-respondent hereinafter referred to as plaintiff, applied for and on March 26, 1964, defendant-appellant, hereinafter referred to as defendant, issued its Comprehensive Medical Expense Policy to plaintiff for family protection for plaintiff and her two minor sons, Larry M. Cohen (an adopted son) and Kenneth G. Cohen. Plaintiff signed the insurance application. Question 11 on the application asked whether the applicant or her family members within the preceding five years had any treatment, examination or advice by a physician. Question 13 asked whether the applicant or any family member ever had "so far as you know" any mental disease, disorder or impairment not mentioned in Question 11. Defendant's agent who accepted the application wrote the answer "No" to Questions

11 and 13. Plaintiff signed the application "as true and complete * * * as they applied to me personally". The policy was in full force from March 26, 1964, to March 26, 1966. Plaintiff's adopted son, Larry Cohen, was hospitalized from May 19, 1965, through August 16, 1965, and her son Kenneth was hospitalized from March 3 to March 5, 1966. On February 7, 1966, by letter, defendant notified plaintiff, with respect to claims submitted for hospitalization of Larry and Kenneth Cohen, that medical reports received by defendant indicated plaintiff had consulted her doctor because of a chronic nervous disorder on thirty occasions in 1959, forty-eight occasions in 1960, and thirty-six occasions in 1961; in the letter the defendant advised it was considering the policy void as of the date of issue, for the reason plaintiff's application did not include this information. Defendant enclosed in its letter to plaintiff a return of all premiums paid in the amount of Three Hundred and Ninety Dollars and Twelve Cents ($390.12). Dr. George Benson, treating physician of plaintiff in 1959, 1960 and 1961, diagnosed plaintiff as "chronic psycho-neurotic depression in a schizoid character—findings were typical of depression with some psychotic overtones". On May 20, 1965, defendant received notification from the hospital with respect to Larry Cohen's claim against defendant for hospital benefits. Defendant first received information concerning plaintiff's prior medical history on January 25, 1966, from a copy of a written summary of Larry Cohen's hospitalization, which summary included a hospital case worker's report dated June 16, 1965, containing a reference to plaintiff's treatment by Dr. Benson.

The trial court's "Finding of Fact" found among others: (8) The medical and hospital expenses of Larry Cohen and Kenneth Cohen covered and indemnifiable under the policy were One Thousand Two Hundred and Seventy-nine Dollars and Seventy-five Cents ($1,279.75). (9) Demand was duly made by plaintiff upon de-

fendant for same. (10) Defendant wrongfully and in violation of its written obligation failed and refused to pay plaintiff the same. (11) Defendant's refusal was vexatious, entitling plaintiff to statutory damages, interest and attorney's fees. (12) Reasonable attorney's fees incurred by plaintiff were Fifteen Hundred Dollars ($1,500.00). (13) Neither plaintiff, Larry Cohen nor Kenneth Cohen, made "any material misrepresentations or fraudulent answers to defendant's agent at the time" agent wrote out plaintiff's application for insurance. (14) " * * * no material misrepresentations or fraudulent statements" were made by plaintiff to defendant's agent in making application for said policy, which defendant has not waived or is not estopped from pleading "as a defense * * * or which would directly and proximately give rise to a defense of material misrepresentation or fraudulent answers." In the trial court's "Conclusions of Law" the court stated inter alia, (3) based on the Findings of Facts the court found plaintiff entitled to a judgment set out above.

Under "Points relied upon" defendant states inter alia (I) (A) The fact to be determined was not what plaintiff told defendant's agent in response to his questions, but rather that the written application signed by plaintiff after she read it contained misrepresentations; (I) (B) Defendant having relied upon the written application which contained misrepresentations which were warranties and material to the risk assumed, entitled defendant to avoid plaintiff's claims and to rescind; (II) The trial court erred in granting to plaintiff statutory penalties under § 375.420, RSMo 1959, V.A.M.S., because the defendant entertained an honest difference of opinion as to its liability and was entitled to demand a judicial determination thereof; (III) The trial court allowed excessive attorney's fees. Plaintiff under "Points and Authorities" states inter alia: 1 (A) The trial court did not err in finding damages for plaintiff and against rescission for the reason: to prevail upon this appeal, defendant must show as a matter of law the trial court should have found plaintiff's statements in her application to be warranties and not mere representations, and, therefore, defendant was required to prove as a matter of law plaintiff fraudulently procured insurance from defendant; 1 (B) Defendant must show as a matter of law the misrepresentations were so material to the risks assumed that defendant was entitled to void the policy ab initio.

First, we note the scope of our review. We rule the case both upon the law and the evidence. The judgment shall not be set aside unless clearly erroneous, and although we make our own findings of fact, we give due regard to the trial court's opportunity to judge the witnesses' credibility. Supreme Court Rule 73.01(d), V.A.M.R.

Viewing the evidence favorably to plaintiff, the trial court would have been justified in believing the following: Plaintiff signed the application, although defendant's agent wrote the answers to the questions, containing answers in the negative as to Questions 11 and 13(b); adopting a statement in defendant's argument, "There was considerable testimony * * * to prove that the questions stated on the application were not in fact literally read to her (plaintiff) by defendant's agent;" before plaintiff signed the application she "checked it over the best way (she) could in the short period of time"; plaintiff answered truthfully to the specific oral questions asked by defendant's agent; defendant's agent told plaintiff to " 'Verify the dates', a few things, dates of the children's births, and he handed me the pen and I verified the dates and I signed it;" plaintiff did not read the entire application; the entire transaction took ten to twenty minutes; plaintiff did not believe Dr. Benson treated her for "anything wrong"; plaintiff had not considered having been psychoanalyzed as being a serious illness in answer to the question orally asked her by defendant's agent; defendant's agent did not specifically ask about a history of emotional illness; defendant's agent's specific instruc-

tions to plaintiff were that she verify the dates of the children's births before signing; plaintiff in 1959, 1960 and 1961 was a patient of one Dr. Benson who never told her what was wrong with her and, according to a stipulation filed by the parties, it was agreed Dr. Benson told plaintiff: "You have an emotional problem consisting of depression and anxiety and need some treatment therefor"; plaintiff saw Dr. Benson a total of one hundred and sixteen (116) times at Twenty Dollars ($20.00) per visit; defendant's agent's oral questions were directed to serious physical illness, such as cancer or heart trouble, and defendant's agent was seated across the room from plaintiff when the agent filled out the application. Hospital expenses incurred by Larry (adopted son of plaintiff) and by Kenneth Cohen bore no relation to the alleged misrepresentation made by plaintiff in answers to Questions 11 and 13. Under published underwriting rules of defendant, it would not have issued the policy to plaintiff had it known of the treatment received by plaintiff from Dr. Benson; nor would it have issued coverage on the plaintiff's children alone.

Defendant first argues plaintiff, having been given an opportunity to read her application before signing it, cannot now complain she did not know its contents. The rule in Gooch v. Motors Ins. Co., Mo.App., 312 S.W.2d 605, 609, is stated: "One who can read and does not read is foreclosed by his own negligence, and while the law affords everyone a reasonable protection against fraud in dealing, it is not an indulgent guardian which can go to romantic length of giving protection against consequences of indolence, folly or careless indifference to ordinary and accessible means of information." In Gooch, the insured testified he gave his correct age and model of automobile involved; however, he admitted he read the application which was untrue as to these two items. Gooch case was cited with approval in Haman v. Pyramid Life Ins. Co., Mo.App., 347 S.W.2d 449, 454. In Haman, the insurer's agent did not

ask applicant certain crucial questions, and placed the untrue answers in the application without knowledge of the insured who signed it when she could have read it but did not read it and was afforded an ample opportunity to do so. The court ruled the insured was bound in law to have known the contents of the application she signed, whether she read it or not. In Miller v. Plains Ins. Co., Mo.App., 409 S.W.2d 770, insurer's agent did not read the questions to the insured; insured did not read the application before she signed it and there was no claim or suggestion of any fraud, mistake or concealment by the agent. The court here again applied the rule in the Gooch case, supra.

We must next determine whether plaintiff's answers in the application were mere misrepresentations or were warranties. If the former, defendant admits in its brief, defendant would have to prove plaintiff practiced fraud on defendant, while if the latter, plaintiff is bound by her application. Houston v. Metropolitan Life Ins. Co., 232 Mo.App. 195, 97 S.W.2d 856; Dixon v. Business Men's Assur. Co. of America, 365 Mo. 580, 285 S.W.2d 619.

General Provision 8 of the policy states: "All statements made by the insured in the application for this policy shall be deemed representations and not warranties." The application signed by plaintiff provides: "The foregoing statements and answers are true and complete insofar as they apply to me personally, and insofar as they apply to my family they are true and complete to the best of my knowledge and belief. It is agreed that: 1. Such statements and answers will form the basis of the contract of insurance, if issued." General Provision 1 of the policy in part reads: "This contract is made on the basis of the application, a copy of which is attached to and made part of this policy, * * *." General Provision 9 of the policy provides that after two (2) years from date of issue only fraudulent misstatements may be used in avoiding this policy or denying a claim under the policy.

In the Houston case, supra, the application contained a clause that the statements therein shall form the basis of a contract of insurance. The policy expressly provided: "[A]ll statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties". The court observed that by no rule of construction could the court convert the statements in the application from representations to warranties, in light of the express provisions of the policy.

■ In the law of insurance the courts do not favor warranties. If there is doubt they lean against a construction of a statement by an insured or an applicant as a warranty and unless it is clearly shown by the form of the contract to have been intended by both parties to be a warranty, to be strictly and literally complied with, it will be held to be a representation. 43 Am.Jur.2d, Insurance, § 750; Schuetzel v. Grand Aerie Fraternal Order of Eagles, Mo.App., 164 S.W.2d 135.

■ The defendant insurance company in our case expressly framed General Provision No. 8 in the insurance policy in no uncertain terms that the statements in the application shall be representations and not warranties. We rule the statements of the plaintiff in her application to be representations and not warranties.

We now turn our attention to pertinent law on fraudulent misrepresentations in insurance applications. Both parties cite Toler v. Missouri Ins. Co., Mo.App., 243 S.W.2d 788, which rules, "In order to avoid liability * * * on the ground of fraudulent misrepresentation the representations by the insured must not only be false and material to the risk, but also must be made with intent to deceive", citing a long line of Missouri authorities at Page 791. "If an insured person has made the truth of the statements contained in his application * * * a warranty thereof, the question whether the falsehood was intentional, or the intention fraudulent, is not vital; to avoid liability on the policy it is sufficient

for the insurer to show that the statement was actually untrue." 43 Am.Jur.2d Insurance, § 747; Schuetzel, supra.

Defendant argues as a matter of law plaintiff practiced fraud upon defendant, citing the Toler case, Page 791, which states: "In this case the facts to be found which constitute the legal equivalent to a finding of intent to deceive are these: that material representations were made; that they were false; that insured knew they were incorporated in the applications when he signed them; and that he knew they were false. Upon such finding the scienter as well as the falsehood is established. The law thereupon supplies the element of fraudulent intent as a conclusive presumption of law." Defendant argues each element of proof has been supplied and as a matter of law, scienter and intent is conclusive in law in our case. We observe, however, in the Gooch, Haman and Miller cases, supra, cited on the proposition one signing an insurance application is bound in law, the question of the elements of fraudulent misrepresentation were not in issue. As we view these three cases, the question of intent to deceive did not arise.

■ In an action on a health insurance policy the burden is on insurer to prove insured induced insurer to enter the contract through fraud or misrepresentation. Makos v. Bankers' Accident Ins. Co., Mo.App., 234 S.W. 369. In Clegg v. John Hancock Mut. Life Ins. Co. of Boston, Mass., Mo. App., 141 S.W.2d 143, 148, our court approved a defendant's instruction with respect to misrepresentations that insured knew at the time he made them the answers on the application were not true; that he made them for the purpose of misleading the insurer and to induce the insurer to enter into the policy of insurance.

■ In our case defendant pleaded in its counterclaim for rescission, "false and fraudulent misrepresentations" by plaintiff "made with the intention to deceive the defendant" and "were intentional and willful"; defendant in its answer pleaded

avoidance because "plaintiff made material misrepresentations and fraudulent statements" in her application; defendant, of course, bore the burden of proof on such propositions. See Makos, supra.

 Scienter, a term usually employed in legal issues involving fraud, means knowledge on the part of a person making representations, at the time they were made, that they are false; 37 Am.Jur.2d, Fraud and Deceit, § 197, p. 260; Morrow v. Franklin, 289 Mo. 549, 233 S.W. 224. The false statement must have been made intentionally to deceive or with what is recognized as the legal equivalent to a deliberately fraudulent intent to deceive; 37 Am. Jur.2d Fraud and Deceit, § 188, pps. 249, 250. Proof of a mere naked falsehood or misrepresentation ordinarily is not enough, even though the complaining party relied thereon. The rule is firmly established the existence of a fraudulent intent or an intent to deceive is an indispensable element. The intent with which a false representation was made by words is ordinarily a question of fact, 37 Am.Jur.2d, Fraud and Deceit, § 196, p. 259. It has been repeatedly held that misrepresentations which will void an insurance policy must be intentionally made where statements of the insured are mere representations and not warranties, Dyer v. Kansas City Life Ins. Co., Mo. App., 188 S.W.2d 758, 761. Issues of fact are presented upon a conflict in the evidence as to whether a representation alleged to have been made by the party charged with fraud, was, in fact, made by him and such issues are to be determined by the trier of the facts. 37 Am.Jur.2d, Fraud and Deceit, § 44, p. 69, citing Monsanto Chemical Works v. American Zinc, Lead & Smelting Co., Mo., 253 S.W. 1006, 1010. An intent to defraud may be presumed or inferred where a false statement, in its nature calculated to defraud and injure, is made with knowledge of its falsity, 37 Am. Jur.2d, Fraud and Deceit, § 446, p. 612.

 We note in Toler, supra, the court found the insured signed an application without knowing the contents thereof. The application, signed in October, 1948, had negative answers as to treatment by a physician or other practitioner within the preceding five years and as to present ailments, diseases or disorders. In answer as to when he last consulted a physician the insured stated in 1943 he was treated for indigestion. Insured had extensive medical treatment and drew two disability benefits from other insurance companies in the Summer and Fall of 1948 prior to the application. The court found in at least four instances insured gave false information on his application. Defendant argued the insurer need prove only legal fraud; i. e., the answers were false to the insured's knowledge. The plaintiff's evidence was, insured told the agent he had had indigestion since 1943, but defendant agent had not asked about treatment by a doctor in the past five years. The last clause of defendant's Instruction No. 9 permitted a finding for defendant if the jury found the application contained a misstatement within insured's personal knowledge at the time he signed the application. The court held the instruction in error as it required a finding for the defendant even though the insured may not have known the contents of the application. The court stated facts necessarily to be found, which constituted the legal equivalent to a finding of intent to deceive are these: material representations were made, they were false, insured knew they were incorporated in the application when he signed it, he knew they were false. In our case the trier of the fact found contrary-wise. We cannot say the conclusion of the trial court was clearly erroneous. We rule against appellant on this point. We are not now required to rule on the question of estoppel, also raised in this appeal.

With respect to the finding of the trial court for the plaintiff on defendant's vexatious refusal to pay under § 375.420, RSMo 1959, V.A.M.S., we conclude, viewing the evidence favorably to the plaintiff, the following: On or about May 20, 1965, defend-

ant received notice that (a) plaintiff had assigned her insurance benefits under the policy to the Jewish Hospital and (b) plaintiff authorized the hospital to release information from "my medical record" to the defendant. (The hospital treatment was for Larry Cohen.) In this "medical record" is a case worker's report on Larry Cohen dated June 16, 1965, which included information that plaintiff had been treated by Dr. Benson for over a year; Larry Cohen was hospitalized from May 19, 1965, to August 16, 1965; on August 26, 1965, defendant requested of Jewish Hospital the medical record on Larry Cohen, and that shortly prior to January 25, 1966, Jewish Hospital supplied the same to defendant; in September, 1965, defendant solicited of and received from plaintiff quarterly payment of premium then due; on February 7, 1966, defendant notified plaintiff by letter of avoidance of policy, the reasons therefor, and tender of premiums; plaintiff filed suit March 21, 1966.

It is a well settled rule of law, where there is an open question of fact or law determinative of the insured's liability, the insurer, acting in good faith, may insist on a judicial determination of such questions without being penalized therefor. Rohlfing v. State Farm Fire & Cas. Co., Mo.App., 349 S.W.2d 472. It is only when it persists in its refusal to pay—after it is aware it has no meritorious defense, that the insurance company becomes liable for vexatious delay. Ireland v. Manufacturers & Merchants Indem. Co., Mo. App., 298 S.W.2d 529, 534. The insurer has a right, without penalty, to litigate an open question of law or disputed facts for which there is reasonable or probable cause for belief. Irelan v. Standard Mut. Ass'n of Cassville, Mo.App., 379 S.W.2d 815, 820.

Plaintiff cites Buffalo Insurance Company v. Bommarito, 8 Cir., 42 F.2d 53. In this fire insurance policy case the fire occurred June 20, 1927. Proofs of loss were delivered to the insurance company August 13, 1927. Under the policy the loss should have been paid October 13, 1927.

The insurance company refused payment and suit was instituted March 1, 1928. The record was devoid of any defenses on the policy until trial April 24, 1929. The reviewing court made these observations on the law of vexatious refusal: Was the refusal to pay "willful and without reasonable cause as the facts appeared to a reasonable and prudent man before trial?"; did the insurer have knowledge of facts supporting its defenses at the time it should have paid but did not pay the loss or at any time before suit was instituted?; a refusal to pay when payment is due is not vexatious if founded on what at the time appeared to be facts; conversely, a refusal is vexatious if founded not on what appeared to be the facts but only a possibility that later investigation may develop facts justifying a refusal to pay, even if such investigation does develop such facts; the insurer must show at the time it should have paid under the contract the facts as they then appeared justified that refusal, l. c. 56, 57. This case was cited as authority in Still v. Travelers Indem. Co., Mo., 374 S.W.2d 95. In the Still case the loss occurred August 9, 1960, proof of loss was submitted September 26, 1960; investigation was made on behalf of defendant insurance company from August 10 to August 20, 1960; avoidance was sought on a lack of insurable interest claimed to be discovered December 2, 1960, and a failure of the insurance company to inform the insured the reason for refusal. The court allowed recovery for vexatious refusal.

We restate this chronology: On May 20, 1965, plaintiff assigned her insurance benefits to the hospital; on August 26, 1965, defendant requested, as it was entitled to do, the assignee of plaintiff to provide the medical record of Larry Cohen; on January 25, 1966, the assignee provided this medical record to the defendant; on February 7, 1966, defendant notified plaintiff by letter it was voiding the contract for stated reasons. Information contained in this medical record gave rise to an open question of fact and law determinative of

the liability of the defendant on the insurance contract which defendant was entitled to litigate.

We now rule the trial court as trier of the facts erred in allowing damages for vexatious refusal by the defendant and for reasonable attorney's fees for plaintiff's attorney. We reverse such portions of the judgment so holding.

The judgment of the trial court is reversed in the respects above noted, otherwise it is affirmed.

WOLFE, P. J., concurs.