

# Missouri Court of Appeals

## Southern District

### Division One

KEYSTONE MUTUAL INSURANCE
COMPANY,

    Plaintiff-Respondent,

vs.

CHRISTINE KUNTZ, CARMEN
MELTON, TERESA MORRIS-
PICKRELL, and TONY PICKRELL,

    Defendants-Appellants.

Nos. SD34540 & 34543
Consolidated

**Filed:  December 21, 2016**

### APPEAL FROM THE CIRCUIT COURT OF POLK COUNTY

Honorable Michael O. Hendrickson

## **REVERSED AND REMANDED**

Christine Kuntz ("Ms. Kuntz"), Carmen Melton ("Ms. Melton"), Teresa

Morris-Pickrell ("Ms. Morris-Pickrell"), and Tony Pickrell ("Mr. Pickrell")

(collectively, "Appellants") appeal from the trial court's order granting summary

judgment in favor of Keystone Mutual Insurance Company ("Keystone").[1]

---

[1] The attorneys representing Ms. Morris-Pickrell and Mr. Pickrell neither filed an appellant's brief nor joined in the brief filed on behalf of Ms. Kuntz and Ms. Melton.  Ordinarily, the failure to file an appellant's brief warrants dismissal of the appeal. ***County Court of Washington County v. Murphy***, 658 S.W.2d 14, 16 (Mo. banc 1983); ***SAB Harmon Indus., Inc. v. All State Bldg. Systems, Inc.***, 733 S.W.2d 476, 479 n.1 (Mo. App. W.D. 1987).  However, the appeal filed

Appellants raise two points: (1) that the trial court erred in denying Ms. Kuntz and Ms. Melton's motion for summary judgment because the undisputed material facts prove their right to equitable garnishment and (2) that the trial court erred in granting Keystone's motion for summary judgment because there are disputed issues of material fact with respect to Keystone's claim that the policy was void *ab initio* due to its insured's misrepresentations. Appellants' first point is unreviewable because the denial of a motion for summary judgment is not an appealable order. However, Appellants' second point has merit. Consequently, we reverse the trial court's judgment and remand the case for further proceedings.

## Factual and Procedural Background

On appeal from summary judgment, this Court views "the record in the light most favorable to the party against whom judgment was entered" and accords "the non-movant the benefit of all reasonable inferences from the record." ***ITT Comm. Fin. Corp. v. Mid-America Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993). So viewed, the following facts were presented in the parties' summary judgment documents.

Dr. Nolan Crisp ("Dr. Crisp") practiced medicine at the Pomme De Terre Bolivar Family Wellness Clinic ("the clinic"). On July 7, 2009, Dr. Crisp submitted an application for medical malpractice insurance the ("2009 application") to Keystone. In the 2009 application, Dr. Crisp made several

---

by Ms. Morris-Pickrell and Mr. Pickrell has been consolidated for all purposes with the appeal filed by Ms. Kuntz and Ms. Melton. Furthermore, in their motion to consolidate, Ms. Morris-Pickrell and Mr. Pickrell stated they "stand in the same legal and factual position regarding Keystone" as Ms. Kuntz and Ms. Melton. Under these circumstances this Court exercises its discretion to not penalize Ms. Morris-Pickrell and Mr. Pickrell with the harsh remedy of dismissal for their attorneys' failure to file an appellants' brief.

representations by marking check-boxes, including that he had never had his privileges to practice at any healthcare facility revoked and that he had never been accused of sexual misconduct of any kind. As part of the application, Dr. Crisp also included a supplemental claims data sheet which listed several medical negligence lawsuits. Dr. Crisp's application further stated "he had no knowledge of any incident that resulted, or may result, in a claim or potential claim that was not listed in the supplemental information sheet."

Keystone did not conduct any independent search for potential litigation against Dr. Crisp after receiving his 2009 application. Keystone issued a policy ("the 2009 policy") based on Dr. Crisp's representations in his 2009 application. The policy term for the 2009 policy ran from July 7, 2009, until July 6, 2010. During that time, Dr. Crisp failed to notify Keystone of any changes to his answers and statements in the 2009 application. Among other things, Dr. Crisp did not inform Keystone when *Taylor v. Crisp*, an additional medical negligence lawsuit, had been filed. Neither did Dr. Crisp inform Keystone that there had been complaints by a female patient about Dr. Crisp's inappropriate sexual behavior towards her.

On July 1, 2010, Dr. Crisp sent a letter ("the 2010 letter") to Keystone. The reference line of the letter stated "Malpractice/Liability insurance[.]" The body of the letter stated:

> Please be advised that there have been no changes to my information regarding malpractice insurance from the previous years. There have been no claims filed in the last twelve months. If you need further information, please feel free to call my office.

Keystone did not conduct any independent search for potential litigation against Dr. Crisp nor did Keystone obtain any information about Dr. Crisp from Dr. Crisp's prior insurance carriers after receiving the 2010 letter. Keystone did not require nor did it receive another completed and signed application form from Dr. Crisp in July 2010. After receiving the 2010 letter, however, Keystone issued a second medical malpractice insurance policy to Dr. Crisp ("the 2010 policy"). The 2010 policy had a policy period of July 7, 2010, to July 6, 2011.

After the 2010 policy was issued, Dr. Crisp again failed to inform Keystone of any changes to the information provided in the 2009 application. But there were changes. These changes included reports from patients about inappropriate sexual contact as well as termination of Dr. Crisp's privilege to practice at the clinic on November 10, 2010.

On April 18, 2011, Keystone sent Dr. Crisp a letter stating that it was rescinding the 2010 policy because Dr. Crisp had failed to disclose information. With its letter, Keystone enclosed a refund of the premium Dr. Crisp had paid for the 2010 policy.

Approximately a year later, on March 21, 2012, Ms. Kuntz and Ms. Melton sued Dr. Crisp for battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and medical negligence based on alleged sexual misconduct and over prescription of drugs. On November 15, 2013, Ms. Kuntz and Ms. Melton consolidated their cases and dismissed their claims of negligent infliction of emotional distress, intentional inflection of emotional distress, and battery. The remaining medical negligence counts were tried to the court, and the trial court entered judgment in favor of Ms. Melton and Ms. Kuntz. On

4

October 19, 2012, Ms. Morris-Pickrell and Mr. Pickrell sued Dr. Crisp for intentional infliction of emotional distress and medical negligence based on over prescribing medication and inappropriate sexual touching. The record is unclear regarding the resolution of Ms. Morris-Pickrell and Mr. Pickrell's claims.

On October 15, 2013, Keystone filed a declaratory judgment action naming Dr. Crisp, the clinic, Ms. Kuntz, Ms. Melton, Ms. Morris-Pickrell, and Mr. Pickrell as defendants. Keystone asked the court to declare, among other things, that the 2010 policy was void *ab initio* because Dr. Crisp made misrepresentations by omissions in his application for insurance. Ms. Kuntz and Ms. Melton counterclaimed seeking equitable garnishment.

Keystone, Ms. Kuntz, and Ms. Melton thereafter filed cross-motions for summary judgment in the declaratory judgment action. On May 31, 2016, the trial court granted Keystone's motion for summary judgment and denied Ms. Kuntz and Ms. Melton's motion for summary judgment. The trial court subsequently entered a final declaratory judgment against all the defendants on June 20, 2016. This appeal followed.

## Discussion

### Point One:  No Review of the Denial of a Motion for Summary Judgment

In their first point, Appellants argue the trial court erred in denying Ms. Kuntz and Ms. Melton's motion for summary judgment on their claim of equitable garnishment. They argue review is permitted because the facts supporting the denied motion are intertwined with the facts supporting Keystone's motion. They are incorrect.

The denial of a motion for summary judgment is not an appealable order because it is not final. *First Nat. Bank of Annapolis, N.A. v. Jefferson Ins. Co. of New York*, 891 S.W.2d 140, 141 (Mo. App. S.D. 1995). Although an exception to the rule of non-reviewability exists where "the merits of the motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party[,]" *Sauvain v. Acceptance Indem. Ins. Co.*, 339 S.W.3d 555, 568 (Mo. App. W.D. 2011), that exception does not apply in the present case. The equitable garnishment claim raised by Ms. Kuntz and Ms. Melton depended upon proof of a covered injury, *see* **Wilson v. Traders Ins. Co.**, 98 S.W.3d 608, 612 (Mo. App. S.D. 2003), which in turn depended upon facts regarding the policy language and Dr. Crisp's actions at the time of treatment. Keystone's argument in support of its motion for summary judgment was that the policy was void based on misrepresentations made during the application process. The two motions for summary judgment involved different legal claims and different operative facts. The denial of Ms. Kuntz and Ms. Melton's motion for summary judgment is not reviewable.

Point One is denied.

### Point Two:  Misrepresentation

In their second point, Appellants argue the trial court erred in granting Keystone's motion for summary judgment. We are constrained by our standard of review to agree.

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT*, 854 S.W.2d at 376. Moreover, the Court will "accord the

6

non-movant the benefit of all reasonable inferences from the record." ***Id.***
Appellate review of summary judgment is *de novo.* ***Id.***

"The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." ***ITT***, 854 S.W.2d at 376. Those criteria are in turn determined by the classification of the moving party as either a claimant or a defending party. ***Id.*** at 380. With respect to the analysis of this point, Keystone was a claimant because Keystone sought to "recover" by declaratory judgment. *See **id.*** ("A claimant is one who 'seeks to recover,' without regard to whether recovery is sought by claim, counterclaim, cross-claim or declaratory judgment."). To obtain summary judgment, "[a] 'claimant' must establish that there is no genuine dispute as to those material facts upon which the 'claimant' would have had the burden of persuasion at trial." ***Id.*** at 381.

Keystone's summary judgment motion was based on two theories: (1) that the policy was void *ab initio* because it was based on Dr. Crisp's material misrepresentations and (2) that the policy was void *ab initio* because it was based on Dr. Crisp's fraudulent misrepresentations. We address each of these theories in turn. Under the circumstances of this case, we must reverse because each theory would require us to draw an inference favorable to Keystone in order to affirm the trial court's judgment.

To avoid a policy based on a material misrepresentation, the insurance company must show "(1) the representation is warranted to be true, (2) the policy is conditioned upon its truth, (3) the policy provides that its falsity will avoid the policy, or (4) the application is incorporated into and attached to the policy." ***Id.***

(quoting ***Continental Cas. Co. v. Maxwell***, 799 S.W.2d 882, 888 (Mo. App. W.D. 1990)). If one of those four conditions exists, the insurance company need merely show the representation was false and material. ***Id.***

Here, the 2009 policy was due to expire on July 6, 2010. Dr. Crisp sent the 2010 letter barely a week before that on July 1, 2010. The letter referenced malpractice insurance and assured Keystone that (1) there were no changes to Dr. Crisp's insurance information and (2) no new claims had been filed. Although Keystone immediately issued a new policy upon receiving the letter, nothing in the letter stated it was an application for medical malpractice insurance, and nothing in the letter explicitly incorporated the terms of the 2009 application, which included language in the signature section to the effect that Dr. Crisp warranted the statements in the application.

While it might be reasonable to infer the letter was intended to incorporate the 2009 application, that is a factual inference regarding the parties' intent. "[W]hen there is an ambiguity in a contract, a factual question exists regarding the intent of the parties." ***Burrus v. HBE Corp.***, 211 S.W.3d 613, 619 (Mo. App. E.D. 2006). "A party's knowledge, intent, motive, and the like are 'elusive facts,' and '[s]ummary judgment is rarely appropriate in these types of cases in which the facts must in nearly every case be proven by circumstantial evidence." ***Schroeder v. Duenke***, 265 S.W.3d 843, 848 (Mo. App. E.D. 2008) (quoting ***Smith v. Aquila, Inc.***, 229 S.W.3d 106, 124 (Mo. App. W.D. 2007)). While a fact-finder might after a trial legitimately infer the parties intended the 2010 letter to incorporate the 2009 application, that inference cannot be made to support judgment as a matter of law.

8

Nor do the uncontroverted material facts show the elements of fraudulent misrepresentation as a matter of law. There are seven elements to a claim that a policy is void *ab initio* based on a fraudulent misrepresentation:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or his ignorance of the truth; (5) the speaker's intent that his statement be acted upon; (6) the hearer's ignorance of the falsity of the statement; (7) his reliance on the truth of the statement; [and] (8) the hearer's right to rely on the statement.

*Cova v. American Family Mut. Ins. Co.*, 880 S.W.2d 928, 930 (Mo. App. E.D. 1994) (quoting *Prudential Prop. & Cas. Ins. V. Cole*, 586 S.W.2d 433, 436 (Mo. App. E.D. 1979)). The key problem in this case involves the element of the speaker's intent. In the context of a claim of fraudulent misrepresentation the intent necessary to avoid the policy is the speaker's intent to deceive. *Id.* "The intent with which a false representation was made by words is ordinarily a question of fact." *Cohen v. Metropolitan Life Ins. Co.*, 444 S.W.2d 498, 505 (St. L. Ct. App. 1969). "Authority may be found for the proposition that an intent to deceive *may* be inferred where a false statement, which by its very nature is calculated to defraud, is made with knowledge of its falsity." *Cova*, 880 S.W.2d at 931. However, nothing requires a finder of fact to make that inference. *Id.*

Here, nothing in the statement of uncontroverted material facts indicates what Dr. Crisp knew. Moreover, there is nothing in the statement of material uncontroverted facts showing Dr. Crisp possessed an intent to deceive when he sent the 2010 letter or even that it was an application for new insurance. Although that intent could be inferred upon trial in this case, this case is currently before this Court on review of a grant of a motion for summary

9

judgment. In this procedural posture, all inferences must be drawn in favor of the non-moving party. *ITT*, 854 S.W.2d at 376. The trial court erred when it inferred intent to deceive from the facts before it because that inference favored the moving party.

To support its argument in favor of affirmance, Keystone relies on *Cohen* for the proposition that intent to deceive may be inferred "where the representation by its nature is calculated to defraud and injure and was known to be false at the time it was made." That reliance is misplaced because *Cohen* was presented to the appellate court in a different procedural posture. In *Cohen*, the case came to the appellate court after a judgment in a court-tried case. *Id.* at 500. That is, in *Cohen*, the trial court was sitting as a trier of fact and was entitled to draw inferences in favor of whichever party it chose. *See White v. Director of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010) (noting that in a court-tried case on disputed evidence, "[a] trial court is free to disbelieve any, all, or none of that evidence."). Here, in contrast, the trial court was evaluating a motion for summary judgment, so it was required to draw all inferences in favor of the non-moving party. *ITT*, 854 S.W.2d at 376.

Point Two is granted.

10

## **Decision**

The trial court's judgment is reversed. The case is remanded for further proceedings consistent with this opinion.


MARY W. SHEFFIELD, C.J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. – CONCURS

DON E. BURRELL, J. – CONCURS