Charles WOLK and Katherine
Wolk, Appellants,

v.

Max H. CHURCHILL, Jr. and Mary Ann
Churchill, Appellees.

Lee & Schermen Realty Co.

No. 81–2164.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1982.

Decided Dec. 30, 1982.

Thompson & Mitchell, James J. Raymond, James M. Giacoma, St. Louis, Mo., for appellants, Charles and Katherine Wolk.

Jerome Wallach & Associates, Jerome Wallach, Fenton, Mo., for appellees, Max H. Churchill and Mary Ann Churchill.

Before HEANEY and ROSS, Circuit Judges, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

Charles and Katherine Wolk appeal from a judgment, pursuant to a jury verdict, in favor of Max and Mary Ann Churchill, dismissing the Wolks' claim on a promissory note made by the Churchills and awarding the Churchills $110,000 actual and $15,000 punitive damages on a fraud counterclaim against Charles Wolk. The district court denied the Wolks' motions for a new trial or judgment notwithstanding the verdict. They seek reversal of the judgment and a new trial. Because we find that the jury may have awarded actual damages on the counterclaim under a partially erroneous instruction on Missouri law of fraudulent misrepresentations, we affirm only if the Churchills agree to a reduction in the award of actual damages. If they refuse to accept a remittitur, we remand the case for a new trial on their counterclaim for fraud.

I. BACKGROUND.

From March until September of 1978, Charles J. Wolk [Wolk] negotiated with Max H. Churchill, Jr., [Churchill] for the sale of the Wolks' company, Ormsby-Osterman, Inc., a machine and fabricating business in St. Louis, Missouri. Ormsby-Osterman performed various specialized machining jobs for other companies and manufactured a "scissors lift" elevating platform

used in unloading trucks. Wolk owned a patent on the scissors lift, United States Patent No. 3991857. The negotiations culminated in a contract signed on September 6, 1978, and the deal was closed on September 8, 1978.

The agreement required the Wolks, among other things, to transfer to the Churchills certain realty and personalty of Ormsby-Osterman, the patent on the scissors lift, and all of the stock of the company.[1] The Churchills agreed to pay $165,000, by assuming the balance due on a Small Business Administration (SBA) loan to Wolk in the amount of approximately $44,300, paying $50,000 down, and making a note payable to the Wolks for a principal amount of $70,700. After six monthly payments, the Churchills ceased making payments on the note. The Wolks filed this diversity suit on the note in the United States District Court for the Eastern District of Missouri. The amount still owing on the note was $67,389.70.

As affirmative defenses to the suit on the promissory note, the Churchills contended (1) that Wolk violated Missouri securities laws, Mo.Ann.Stat. §§ 409.101(2) and 409.411(f) (Vernon 1979 & 1982 Supp.), by making untrue statements of material fact and failing to reveal material facts necessary to correct misleading statements,[2] and (2) that the Wolks failed to substantially comply with the terms of the contract underlying the note. The Churchills also filed various counterclaims against Wolk, alleging breach of contract, fraudulent misrepresentations, and violation of Missouri securities laws. The case was tried before a jury in August of 1981, resulting in a verdict in favor of the Churchills on the note and in their favor against Wolk on the counterclaim for fraudulent misrepresentations. The jury awarded the Churchills $110,000 actual and $15,000 punitive damages on the counterclaim, and the court entered judgment based on that award.

On appeal, the Wolks raise several issues. First, Wolk asserts that the district court should have granted a new trial on the fraud counterclaim because the verdict-directing instruction on this counterclaim was erroneous in several respects. Second, he asserts that the district court erred in denying his motion for judgment notwithstanding the verdict because the damages awarded on the counterclaim were not supported by the evidence. Third, he objects to certain admissions of evidence at the trial. Finally, the Wolks seek a new trial on their promissory note claim because of allegedly prejudicial error in the court's jury instruction regarding the Churchills' affirmative defenses to this claim.

## II. DISCUSSION OF ISSUES.

### A. Verdict-Directing Instruction on Fraud.

Regarding the Churchills' counterclaim for fraudulent misrepresentations, the district court instructed the jury as follows:

Your verdict must be for the defendants on their counterclaim for fraudulent misrepresentations if you believe, first, plaintiff Charles Wolk represented to the defendants that there were no business liabilities or obligations of any nature, whether absolute, accrued, contingent or otherwise, except as disclosed by the plaintiffs to the defendants, that the plaintiffs had no knowledge of any developments or threatened developments of the nature that would be materially adverse to the business, that the plaintiffs

---

1. The transfer was from Wolk and his wife Katherine to Churchill and his wife Mary Ann, but neither wife participated in the negotiations or the mechanics of the sale beyond signing the requisite documents. We are not asked to reconsider the district court order dismissing the Churchills' counterclaims against Katherine Wolk and denying Wolk's oral motion for a directed verdict against Mary Ann Churchill on the counterclaims. Wolk v. Churchill, No. 79–

1543 C(C) (E.D.Mo.) (order filed August 24, 1981). Wolk and his wife, therefore, are parties to this appeal on the promissory note claim against the Churchills; but only Wolk is party to the appeal on the Churchills' fraud counterclaim.

2. The parties agree that their claims arose in Missouri and that Missouri substantive law applies to all issues involved in this case.

would transfer United States Patent 3991857 to the defendants, that the plaintiffs would reduce the payment balance by any amount not collected by the defendants on the sale of certain washer units, not to exceed $28,532.40, and that an injunction preventing the sale of these washer units would be lifted in November, 1978, to enable their sale to satisfy past due amounts in the union pension fund owed by the business, that no litigation was pending or threatened or in prospect against or relating to said business, that the plaintiffs owned all of the outstanding capital stock of said business, intending that the defendants rely upon any such representation, in purchasing the assets and stock of Ormsby Osterman, Incorporated;

And second, that any of the representations were false;

And third, that plaintiff Charles Wolk did not know whether the representations were true or false;

And fourth, any of the representations were material to the purchase by the defendants of the assets and stock of Ormsby Osterman, Incorporated;

And fifth, defendants reasonably relied upon any of the aforesaid representations in making the purchase;

And sixth, as a direct result of any such representations, the defendants were damaged.

Wolk asserts that this instruction was prejudicial because several "misrepresentations" listed in the first paragraph of the instruction could not support a finding of fraud liability under Missouri law. This assertion is broken down into several objections concerning individual misrepresentations listed in the instruction. Because these misrepresentations were listed in the disjunctive, an error on any one of them is grounds for a new trial to the extent that the jury might have based its finding of fraud liability and damages on such error. *See Wright v. Farmers Co-Op of Arkansas and Oklahoma,* 620 F.2d 694, 697 (8th Cir. 1980); *Hardy v. St. Louis-San Francisco Railway Co.,* 406 S.W.2d 653, 659 (Mo.1966).

■ Wolk's first objection to the listed misrepresentations is that certain of them created contractual duties not cognizable under a claim of fraud in Missouri. For example, Wolk points to the alleged misrepresentation in the instruction that the Wolks would reduce the payment balance under the contract by any amount, up to $28,532.40, not collected on the sale of certain washer units in Ormsby-Osterman's inventory.[3] This representation was a promise explicitly made in the purchase agreement which Wolk contends is at best a contractual warranty, not a basis for liability in fraud. The parties differ as to whether this particular objection to the instruction was properly brought before the district court. We need not resolve this difference, however, because we read Missouri law to allow fraud claims based on misrepresentations in the form of promises made with the contemporaneous intent not to perform. *Ogilvie v. Fotomat Corp.,* 641 F.2d 581, 584–585 (8th Cir.1981); *Dillard v. Earnhart,* 457 S.W.2d 666, 670–671 (Mo. 1970); *McGuire v. Bode,* 607 S.W.2d 165, 167–168 (Mo.App.1980); *Bauer v. Adams,* 550 S.W.2d 850, 853 (Mo.App.1977). Therefore, even if Wolk preserved this matter for review by proper objection before the district court, we find no error in this aspect of the instruction.

■ Wolk next objects to the listed misrepresentations concerning the lifting of the injunction on the sale of the washer units in November of 1978 and the Wolks' ownership of "all of the outstanding capital stock of [the] business."[4] He asserts that

---

**3.** These units had been manufactured by the company but were enjoined from sale at the time of the contract pursuant to a court order in an unrelated action referred to as the "Mart litigation." That litigation was the same underlying the Churchills' allegation that Wolk misrepresented that an injunction covering the units would be lifted in November of 1978.

**4.** The evidence supported a finding that the injunction was still in effect after the November deadline and that Wolk had to pay approximately $16,000 into an escrow account in order

these were merely misstatements of law or expressions of legal opinion, neither of which can be the basis for a fraud claim in Missouri. *See Fredrick v. Bensen Aircraft Corp.*, 436 S.W.2d 765, 770 (Mo.App.1968). We do not feel that Wolk sufficiently made this objection below; he made a general objection that "a submissible case has [not] been made on fraud." Without a more detailed objection to this part of the instruction specifying "the matter * * * and the grounds" therefor, we refuse in this case to entertain such an objection for the first time on appeal. Fed.R.Civ.P. 51. *See also* Fed.R.Civ.P. 61; *Fields v. Chicago, Rock Island and Pacific Railroad Co.*, 532 F.2d 1211, 1214–1215 (8th Cir.1976).

■ Wolk also claims that the Churchills suffered no damage as a result of the misrepresentations concerning the transfer of some of the company's stock and the transfer of the patent on the scissors lift, because the Churchills received all the stock for which they contracted, albeit late, and have manufactured the scissors lift without any interference from Wolk as the continuing patent owner.[5] He asserts, therefore, that the district court should have deleted those provisions of the instruction. This contention was clearly raised by Wolk in objecting to the instruction before the district court.[6] Missouri cases are somewhat less than clear on the availability of nominal damages in a fraud case. *Compare Stevenson v. Stevenson*, 618 S.W.2d 715, 718–719 (Mo.App.1981) (actual damages are a part of a tort cause of action for deceit) *with Wilson v. Murch*, 354 S.W.2d 332, 338 (Mo.App.1962) (plaintiff can recover nominal damages in fraud action if there is some evidence of damage even if precise amount cannot be ascertained). Assuming actual damage is required, however, there was suf-

ficient evidence of such damage on these two matters to submit the issue to the jury under the instructions as given.

Wolk testified that he had to pay approximately $16,000 to get some of the company's stock out of an escrow account after the closing with the Churchills, and Churchill testified that he had to meet with various bank and realty officials to effectuate the ultimate transfer of that stock some time after the closing. The jury could reasonably infer from this testimony, at the very least, that Churchill was damaged by being deprived of this stock between the closing and the meeting at the bank, or by having to bear the expense of taking time out of his business to travel to the bank and complete the transfer. Wolk also testified that the patent might have a value of up to $40,000. The failure to transfer such a valuable asset in itself damaged the Churchills, notwithstanding their ability to run Ormsby-Osterman without it. The business was worth that much less without the patent as an asset.

Wolk further objects to this instruction because he feels that some of the listed misrepresentations were not false and thus should not have been given to the jury for consideration.[7] The district court, however, properly instructed the jury that a finding that "any of the representations were false" was a necessary element of the fraud counterclaim. All of the misrepresentations listed in the instruction were at least arguably misleading, and we find that the issue of "falsity" was a fact question properly submitted to the jury herein.

■ Wolk's final objection to the verdict-directing instruction on fraud, as quoted in the beginning of this subsection, is the most

---

to transfer some of the stock to the Churchills in late September of 1978, after the contract and the closing.

**5.** Churchill had not received the patent as of the date of trial, even after making repeated requests for its transfer.

**6.** At the jury instruction conference, Wolk's attorney stated, "I object on the grounds that I think there is testimony there has been no

damage as the result of the patent or as the result of any stock problems, so those should be out."

**7.** Again we question whether Wolk properly preserved this question for review, but we can just as easily dismiss this contention on the merits under the assumption that Wolk made a proper objection below.

troublesome. The district court instructed the jury on its view of the intent necessary to support a finding of fraud, based on any of the listed misrepresentations, in the third paragraph of this instruction: "that plaintiff Charles Wolk did not know whether the representations were true. or false." Wolk objected to this part of the instruction "on the grounds that the instruction should require the finding [that] at the time the representations were made the plaintiff, Charles Wolk, knew they were false." He presses this same objection on appeal. As to the listed misrepresentations which were promises of future action by Wolk, we agree with his objection.

The instruction given by the district court correctly summarized the general intent standard necessary to sustain a claim of fraudulent misrepresentation in Missouri— the speaker's knowledge of the falsity of a representation or ignorance of its truth. *See Cotner v. Blinne,* 623 S.W.2d 615, 618 (Mo.App.1981). As discussed in our consideration of Wolk's first objection to this instruction, however, some of the listed misrepresentations were promises which Wolk allegedly had failed to perform. As to such promises, a showing of intent not to perform at the time the promise was made is necessary to support a fraud claim—the intent to perform is an existing fact and the speaker must know that intent is falsely represented, not just be unsure of the likelihood of her or his own future performance. *Ogilvie v. Fotomat Corp., supra,* 641 F.2d at 585; *Dillard v. Earnhart, supra,* 457 S.W.2d at 670–671; *McGuire v. Bode, supra,* 607 S.W.2d at 168; *Bauer v. Adams, supra,* 550 S.W.2d at 853; *Klecker v. Sutton,* 523 S.W.2d 558, 562 (Mo.App.1975).

The verdict-directing instruction in the present case did not properly make this distinction: the district court stated that the intent necessary as to each misrepresentation was only that Wolk "did not know whether the representations were true or false." Thus, the jury was allowed to assess liability and damages under an erroneous legal standard as to any misrepresentations which were promises of future action by Wolk. We find that this error could have affected the damages awarded by the jury on the counterclaim, and that Wolk is entitled to some relief on appeal because of the error. Ordinarily, the relief requested by Wolk, a new trial, would be the proper remedy for such error. In the present case, however, the error was limited to those listed misrepresentations which were, in essence, promises made by Wolk. We find that only two of the listed misrepresentations fall into this category—Wolk's promise to transfer the patent on the scissors lift, and Wolk's promise to reduce the payment balance on the note by any amount, up to $28,532.40, not recovered on the sale of certain washer units in the company's inventory.[8]

The highest value reasonably attributable to the patent on the record was $40,000, as Wolk himself testified. Also, if the jury believed that Wolk's promise to pay the difference in the sale price of the washer units and $28,532.40 was a fraudulent misrepresentation, the most damage to the Churchills which reasonably could be attributed to this misrepresentation would be $28,532.40, assuming that the units were without value and that Wolk refused to abide by the reimbursement provision. Thus, the maximum amount of actual damages assessed by the jury which reasonably could be attributed to the error in the verdict-directing instruction on fraud is $68,-532.40—$40,000 for the patent and $28,-532.40 for the washer unit reimbursement. The remainder of actual damages awarded by the jury can be attributed to the numerous undisclosed liabilities found in the record, concerning which the instruction on

8. Wolk asserts that we also should consider his promise to transfer all of the stock of Ormsby-Osterman under this category of misrepresentations requiring a higher degree of intent. We disagree. The instruction concerning stock ownership stated that Wolk represented that he and his wife "owned all of the outstanding capital stock of [the] business." This representation was not a promise to convey, but a statement of fact, so the rest of the fraud instruction was correct as applied to it.

fraud was entirely proper.[9] Based on the record, we also hold that the award of punitive damages in this case was not made or increased by virtue of the limited error made by the district court in instructing the jury.

Because we find that only $68,532.40 of the actual damages awarded reasonably could be attributed to error in the verdict-directing instruction on fraud, we refuse to unconditionally vacate the judgment of the district court and remand for a new trial. Instead, the Churchills may accept a remittitur in the award of actual damages of $68,532.40 and the judgment will be affirmed in the amount of $41,467.60 actual and $15,000 punitive damages; or they may refuse this reduction and the case will be remanded for a new trial on their counterclaim for fraud.[10] This option protects any rights of Wolk which might have been adversely affected by the error below while giving the Churchills the opportunity to accept at least a partial award on the counterclaim without the expense of more litigation or the risk of a different judgment on the fraud counterclaim at retrial. *See United States v. 47.14 Acres of Land, More or Less,* 674 F.2d 722, 728–729 (8th Cir. 1982); *Pemberton v. OvaTech, Inc.,* 669 F.2d 533, 541–542 (8th Cir.1982).

Having thus disposed of all of Wolk's objections to the content of the verdict-directing instruction on fraud, we now briefly consider the other contentions raised by Wolk and his wife in this appeal.

B. *Sufficiency of the Evidence to Support the Award of Damages.*

Wolk claims that the district court erred in denying his motion for judgment notwithstanding the verdict because the evidence did not support the award of $110,000 actual and $15,000 punitive damages. Wolk characterizes this claim in several ways: that the Churchills failed to meet their burden of proof of damages on their counterclaim, that the jury improperly attempted to effect a recission with their award, that the award was a result of jury prejudice or bias, and that the element of causation between the alleged fraudulent misrepresentations and the Churchills' damage was lacking. Each of these characterizations boils down to whether the jury had sufficient evidence to assess damages in the amounts awarded. We hold that it did.

The district court properly instructed the jury that, if the Churchills proved their fraud counterclaim, the measure of actual damages would be "the difference between the actual value of the assets and stock of Ormsby Osterman, Incorporated on the date that they were sold to the defendants, and what their value would have been on that date had the assets and stock of Ormsby Osterman, Incorporated been as represented by the plaintiff, Charles Wolk." This instruction embodied Missouri's "benefit of the bargain" rule for fraud damages. *See Walsh v. Ingersoll-Rand Co.,* 656 F.2d 367, 371 (8th Cir.1981). Although none of the testimony or exhibits gave independent calculations of the value of the company either as sold or as represented, we find that the jury had ample evidence on which to estimate these values.

No one disputed at trial that the sale price of $165,000, the figure arrived at between Wolk and Churchill after several

---

9. The listed misrepresentation covering these undisclosed liabilities was that Wolk represented that "there were no business liabilities or obligations of any nature, whether absolute, accrued, contingent or otherwise, except as disclosed by the plaintiffs to the defendants." Based on our analysis of Missouri law, the intent instruction given was sufficient to support a finding that such a misrepresentation is actionable fraud.

10. Since the issues of fraud liability and damage in this case are interrelated, the new trial, if necessary, will be on the issues related to the counterclaim for fraud. We see no need to relitigate the Wolks' claim on the promissory note since that claim was presented to the jury as a separate issue and the decision of the jury on that issue was proper.

If a new trial is conducted, the jury should be instructed on the effect that the judgment for the Churchills on the note has on damages recoverable by them on their fraud counterclaim.

months of negotiation, was not a fair estimate of the value of the company as represented. But the record is replete with instances of company liabilities not disclosed to Churchill, even though Wolk had represented that all such liabilities had been brought to Churchill's attention. Based on the instructions as given, the jury reasonably could have deducted these undisclosed liabilities and various other misrepresented assets from the negotiated price in order to estimate the actual value of Ormsby-Osterman as transferred to the Churchills.[11] The difference in these amounts could have been well in excess of $110,000, depending on the jury's evaluation of the credibility of the testimony at trial. Thus, the evidence was sufficient to support this award of actual damages. We also see no reason to disturb the award of punitive damages in this case.

## C. *Admissibility of Evidence.*

■ Wolk asserts that he is entitled to a new trial based on the allegedly erroneous admission of certain evidence at trial. Over Wolk's objections, the district court admitted evidence of his arguably improper conduct prior to the sale in acquiring the SBA loan which Churchill assumed under the contract, and of Wolk's signing an addendum to a union agreement after the sale, possibly without proper authorization by Churchill and which could have contributed to a later union strike at Ormsby-Osterman. Wolk contends that this evidence was irrelevant and prejudicial.

The focus of the Churchills' counterclaim was that Wolk made various false statements amounting to fraud in inducing the Churchills to buy the business. Wolk's knowledge or ignorance of the truth of those statements—that is, his intent—was a necessary element of that counterclaim. His dealings in acquiring funds for the business prior to the sale and in assisting

Churchill in the period of transition of ownership after the sale, including his signing of the addendum to the union agreement, could be probative as circumstantial evidence of Wolk's intent in making the alleged misrepresentations. *See Bauer v. Adams, supra,* 550 S.W.2d at 853 (intent to deceive can be proven by direct or circumstantial evidence). We therefore find that the district court did not abuse its discretion in deciding that this evidence was more probative than prejudicial and allowing its admission. *See E.I. du Pont de Nemours & Co. v. Berkley & Co.,* 620 F.2d 1247, 1272–1273 (8th Cir.1980); *Lewis v. Bucyrus-Erie, Inc.,* 622 S.W.2d 920, 925 (Mo.1981) (en banc); Fed.R.Evid. 403.

## D. *Jury Instruction on Affirmative Defenses.*

■ The Wolks finally contest the district court's instruction to the jury concerning the Churchills' affirmative defenses to any liability on the promissory note. The court instructed the jury:

[Y]our verdict must be for the defendants on plaintiffs' claim for breach of the promissory note if you find upon the defendants' affirmative defense, that number one, plaintiffs in connection with the sale of Ormsby Osterman, Incorporated stock to defendants directly or indirectly made any untrue statement of a material fact, or number two, plaintiffs in connection with the sale of Ormsby Osterman, Incorporated stock to defendants directly or indirectly omitted to state a material fact necessary, in order to make the statements made, in light of the circumstances under which they were made, not misleading, or number three, plaintiffs in connection with the sale of assets and stock of Ormsby Osterman, Incorporated to defendants, committed breaches of the underlying contract of a sufficient nature to constitute a failure on the part of the

---

11. We have decided that, as to liability, part of the instructions were erroneous in allowing the jury to consider an improper standard of intent in connection with allegedly unfulfilled promises made by Wolk. We realize that this error could have affected the amount of damages

which the jury awarded, but have taken this into consideration in our remedy for that error. If the instructions had correctly stated the law, however, the jury's verdict and award as rendered could stand the present challenge based on the sufficiency of the evidence.

plaintiffs to substantially perform obligations on the contract.

This instruction presented the issues of Wolk's alleged misconduct in the sale of Ormsby-Osterman stock and the Wolks' breach of contract only as affirmative defenses to the underlying claim on the note. The Churchills originally pled these issues both as defenses to the Wolks' action and as counterclaims against the Wolks; at trial, however, the Churchills narrowed their counterclaim to the fraud issue. Therefore, we deal with the present instruction only as an affirmative defense and not as a separate ground of support for the award of damages on the Churchills' counterclaim.

The Wolks seek a new trial of their promissory note claim against the Churchills based on alleged error in this affirmative defense instruction. Their only objection to this instruction at trial was the belief that the first and second defenses in the instruction were "based on the Missouri Securities Law and there should be an accompanying instruction on scienter." On appeal, they raise this same objection and further assert that the Churchills failed to establish that this transaction was a sale of stock; that even if part of the transaction was a sale of stock, the defense should have been limited to the value of that stock apart from the other property sold to the Churchills; and that specific acts of breach of contract should have been included to support the third defense raised. Viewed as a whole, we find the instruction was proper.

As to the Wolks' "scienter" objection, the Missouri Supreme Court has condoned the use of the type of affirmative defense instruction given in the present case, based on the statutory language of Missouri securities law. *Bayne v. Jenkins,* 593 S.W.2d 519, 530–531 (Mo.1980) (en banc). The instruction in the instant case tracked the same statutory language, and we approve its use in the absence of Missouri law that a separate intent instruction must be included. As to their claims that the Churchills did not prove this was a stock transaction or that the district court should have limited the portion of the instruction based on the

stock transfer to the amount of the note given as consideration for the stock of Ormsby-Osterman, we find that these objections were not properly presented to the district court and need not be considered here. *See* Fed.R.Civ.P. 51 & 61; *Fields v. Chicago, Rock Island and Pacific Railroad Co., supra,* 532 F.2d at 1214. Even if these objections were preserved, the record supports a finding that this transaction was a transfer of stock, at least in part; and the court's failure to limit the instruction on the first and second defenses did not prejudice the verdict, in light of all the evidence of the Wolks' breach of contract also before the jury. Lastly, on that part of the instruction concerning breach of contract as a defense, we find that the instructions, taken as a whole, specified sufficient instances of the Wolks' failure to substantially perform to support such an affirmative defense. No more specific instruction was required in this case.

### III. CONCLUSION.

Our consideration of each of the Wolks' assignments of error in this case reveals that only one of those claims merits relief— that is, the claim that the jury, in determining liability and assessing damages, was allowed to apply an erroneous standard of intent to misrepresentations listed in the instruction on the fraud counterclaim which were, in essence, promises made by Wolk. To remedy this error, the Churchills may consent to a remittitur and accept an award of $41,467.60 actual and $15,000 punitive damages and the judgment will be affirmed in that amount. They must consent within thirty days of this decision; otherwise, the district court will vacate its judgment insofar as the fraud counterclaim is involved and the case will be set for a new trial on the issues of fraud liability and fraud damages.

We therefore remand to the district court to retain jurisdiction for further proceedings, if necessary, not inconsistent with this opinion.