**Robert L. PRESTON, et al.,**
**Plaintiffs-Appellants,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 81–1165.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 2, 1981.
Decided June 14, 1983.

Hamilton Smith, McDermott, Will & Emery, Stewart W. Karge, Chicago, Ill., for plaintiffs-appellants.

Frank M. Tuerkheimer, U.S. Atty., Krista M. Ralston, Asst. U.S. Atty., Madison, Wis., for defendant-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Plaintiffs-Appellants filed a Petition for Rehearing on January 12, 1983 raising issues as to the measure of damages to be utilized by the district court on remand. The appellee was requested to file an answer to the petition, and did so on February 22, 1983.[1]

This court's opinion of December 29, 1982 (reported in 696 F.2d 528) treated the issue of damages in a very limited fashion because the district court had essentially directed a verdict for the government on the issue of liability. The district judge also found that

> [P]laintiffs suffered no injury as a result of defendant's conduct, under any view of the facts, and would be entitled to no more than nominal damages, under any view of the law. Memorandum, p. 2, December 8, 1980.

Our opinion differed with this conclusion, of course, as we determined that the fact of damage had been proven. However, the measure of damages was not reached by the district judge, nor was it put in issue by the briefs. Therefore, it would be inappropriate for us to address that issue on appeal. However, one of the questions raised in the

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. On January 26, 1983 the Court granted appellee's motion for an extension of time to file its Petition for Rehearing. However, the period of extension expired and, upon inquiry of the Court, the government indicated that it did not intend to file a petition.

petition goes more to the nature of the government's liability than to the actual computation of damages. In the opinion of December 29, 1982 we stated:

> We believe a proper measure of damages would be to hold defendant liable for the value of all grain taken in excess of its *pro rata* share as of November 21, 1972. That was the date on which the defendant issued the first loading order and thereby began assailing the other cotenants' interest in bad faith. 696 F.2d at 743.

Appellants inquire in their petition whether we intended to limit the recovery of damages to only those plaintiffs who had a claim to grain in the warehouse as of November 21, 1972. We answer this question in the negative because, as suggested by the second sentence quoted above, the conversion in this case was of a continuing nature during the period of time in which the load-outs were occurring. Put another way, the government's conduct violated its duty to the cotenants as of November 21, 1972 and to those parties who became cotenants thereafter.

We note also that appellants state in their petition that they represent some, but not all, of the farmers who incurred losses as a result of the demise of Grain Finance and Farmers Grain Exchange. We do not believe that the plaintiffs' recovery should be limited by the fraction representing their proportionate representation of all the depositors at the warehouse. In our original opinion, we rejected the government's theory of the proper measure of damages as being too impractical, and possibly even impossible, to implement. We concluded that a simpler standard should apply and proposed the one quoted above, i.e., that the government should be liable for the value of all grain taken in excess of its *pro rata* share as of November 21, 1972. In order to compute the government's *pro rata* share (designated "x") the following computation must be made (using figures from November 21, 1972):

$$x = \frac{\text{bushels represented by CCC's receipts}}{\text{bushels represented by all receipts}} \times \frac{\text{bushels}}{\text{in storage}}$$

The amount of grain that the government received in excess of its *pro rata* share (designated "y") would be computed as follows:

$$293{,}168.27 - x = y$$

Applying the language of our opinion literally, "y", translated into a dollar value, should represent the damages in this case. However, if we were to further reduce the damages to an amount representing plaintiffs' proportionate interest with respect to the other depositors, "y" would have to be reduced in the following manner:

$$y \times \frac{\text{bushels representing plaintiffs' receipts}}{\text{bushels representing all depositors' receipts (except CCC's)}} = z$$

If we were to make this reduction, the difference between "y" and "z" would represent a bonus to the government for its wrongful conduct. That is, it would represent an amount in excess of CCC's *pro rata* share which the government would be entitled to retain despite the fact that it was obtained by conversion.

Furthermore, as discussed above, the formula stated in the initial opinion was the result of a simplification process designed to produce a practical, yet fair, measure of damages. In designing that computation of damages we attempted to balance the relative benefits of such an approximation. In limiting the determination of the defendant's share to a single date the government benefited in two ways. First, the deposits made by the plaintiffs after November 21, 1972 would not be utilized to diminish the government's share. (That is, those amounts would not be included in the denominator of the fraction in the first equation noted above.) Additionally, the government's share would be determined at a time when the shortage at the warehouse was the smallest, see 696 F.2d at 533. These concessions were necessary in order to obtain a practical damage calculation. However, in order to balance those concessions to the government and to insure that the government not benefit from its wrong-

doing, we concluded that the damage formula, as stated in the initial opinion, should not be reduced by a factor representing the plaintiffs' proportionate representation of all the depositors.[2] Of course, since we cannot compute with precision the actual monetary damages the plaintiffs would receive under this formula, the district court will have the discretion to deviate from it if its application would result in an inequity.

The district judge to whom this case is remanded will, no doubt, have a difficult task in resolving the many issues involved in determining a proper computation of damages. We note, however, that great latitude will be afforded the court in making its analysis, because appellate review is extremely limited in such cases:

> [T]he "fact finder may act on probability and inference ... Even though we may not agree with each step in the [fact finder's] reasoning process, we must affirm ... unless the findings are beyond the pale of sane judgment." *Trabert & Hoeffer, Inc. v. Piaget Watch Corp.,* 633 F.2d 477, 484 (7th Cir.1980) quoting *Locklin v. Day Glo Color Corp.,* 429 F.2d 873, 880 (7th Cir.) *cert. den.,* 400 U.S. 1020, 91 S.Ct. 582, 584, 27 L.Ed.2d 632 (1971).

Therefore, while we have taken this opportunity to clarify some aspects of our decision, the Appellants' Petition for Rehearing is denied.

---

**2.** We note that our decision does not act to foreclose the claims of potential plaintiffs, i.e. the other depositors, since those claims are already time-barred under 28 U.S.C. § 2401(b).

