

# SUPREME COURT OF MISSOURI
## en banc

SHAWN STEVENS,  )
)
    Appellant,  )
)
vs.  )    No. SC94074
)
MARKIRK CONSTRUCTION, INC.,  )
AND KIRK JONES,  )
)
    Respondents.  )

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY**
The Honorable Marco Roldan, Judge

*Opinion issued February 3, 2015*

Shawn Stevens filed suit against Kirk Jones and his property development company, Markirk Construction, Inc., alleging fraudulent misrepresentation in connection with the negotiation and sale of a subdivision lot. Mr. Stevens sought to submit two alleged misrepresentations by Mr. Jones: that the lot "would not flood" and that Mr. Jones falsely promised that he would remedy any flooding problem experienced on the lot if it did flood.

The trial court held, over Mr. Stevens' objection, that the jury had to find that Mr. Jones knew that these representations were false when he made them. Mr. Stevens now appeals the jury verdict in favor of Mr. Jones, arguing that the representation that the lot "would not flood" was a representation of existing fact and, consequently, the jury

merely had to find that Mr. Jones made the representation without knowledge whether it was true or false.

This Court affirms. The representation that the lot "would not flood" is a representation as to what would happen in the future, not a representation of existing fact; therefore, the trial court did not err in requiring the jury to find that Mr. Jones made this representation with knowledge when it was made that the representation was false.

## I.    *FACTUAL AND PROCEDURAL BACKGROUND*

In 1999, Mr. Stevens became interested in purchasing land, for improvement with a custom-built home, in a Blue Springs subdivision known as Stone Creek. Stone Creek was being developed by Markirk Construction, Inc., of which Mr. Jones was president. Mr. Stevens was particularly interested in Lot 335 because it was located on a cul-de-sac and because the fact that the lot sloped downward from the street toward the rear boundary line meant it would accommodate his desire for a walk-out basement.

Lot 335 became available for sale in February 2000. Mr. Stevens visited the lot again. Although he later claimed that he became concerned during this subsequent visit that "water would come through the lot," Mr. Stevens purchased Lot 335 in June 2000. Construction of his house was completed in March 2001.

In November 2009, Mr. Stevens filed suit against Markirk Construction and Mr. Jones,[1] alleging fraudulent misrepresentation in connection with the negotiation and

---

[1] Mr. Stevens' suit also named Damar Development, Inc., the corporate owner of the property on which the subdivision was developed. The jury found in Damar's favor, but Mr. Stevens' appeal concerns only the jury instruction for fraudulent misrepresentation against Mr. Jones.

sale of Lot 335, among other claims. His petition alleged that when he visited the lot after it came on the market, Mr. Jones had expressly and falsely represented to him that "*there had not been, nor would there be*, any problems with storm water drainage or flooding" on the lot. (Emphasis added.) The representation that "there had not been" any problems with storm water drainage of flooding was, by its nature, a representation of existing fact – that there had been no such problems − while the representation that there would be no such problems in the future was, by its nature, a representation as to future events.

At his deposition, a portion of which was read into the record at trial, Mr. Stevens' description of his conversations with Mr. Jones was importantly different. He testified that "[t]o the best of [his] knowledge, to reproduce the exact statement of Kirk Jones, there *should be* no problem with water pertaining to … Lot 335." (Emphasis added.) A statement that "there should be no problem" is, by its nature, a statement as to future events.

Mr. Stevens' trial testimony presented another important variation of the representation. He testified that Mr. Jones told him on two occasions prior to purchase: "*There are no problems* with water issues on Lot 335, and *if there are*, I will regrade, we will regrade, we will build retaining walls, whatever it takes, to resolve the problem." (Emphasis added.) "There are no problems" is, by its nature, a statement of existing fact as to whether there are problems; what Mr. Jones would do "if there are" problems is, by its nature, a statement of future intent.

3

Mr. Stevens further testified that, contrary to Mr. Jones' present and future representations, there had been water issues in the back yard of the lot for the entirety of his ownership and that Mr. Jones had failed to resolve the problems. As a result, he testified, he had been unable to make use of the yard by installing a swing set, pool, or patio because the water runoff left the ground perpetually soggy. He also testified that he had been unable to sell the house after approximately three years.

Mr. Jones denied that he had made false representations about the likelihood that the lot would flood. He said that it was self-evident the property was a natural drainageway but that he never told Mr. Stevens that the lot would not flood or that he would remedy any flooding problems arising on the lot. Instead, he testified that he promised only that, if something was not built according to the engineering plans or the city's requirements, it would be corrected.

The parties agreed that the jury instruction should be based on Missouri Approved Instruction (MAI) 23.05, Fraudulent Misrepresentations. That model instruction states:

Your verdict must be for plaintiff if you believe:

First, defendant *(describe act such as "represented to plaintiff that the motor vehicle was never in an accident")*, and

Second, such representation was made by defendant with the intent that plaintiff rely on such representation in *(purchasing the motor vehicle)*, and

Third, the representation was false, and

Fourth, [defendant knew that it was false] [defendant knew that it was false at the time the representation was made] [defendant made the representation without knowing whether it was true or false], and

4

Fifth, the representation was material to the *(purchase of the motor vehicle)*, and

Sixth, plaintiff relied on the representation in *(making the purchase)*, and such reliance was reasonable under the circumstances, and

Seventh, as a direct result of such representation, plaintiff sustained damage.

\* [unless you believe plaintiff is not entitled to recover by reason of Instruction Number _____ *(here insert number of affirmative defense instruction)* ].

Mr. Stevens' proposed instruction based on MAI 23.05 again varied the phrasing of the representations he alleged Mr. Jones had made. He proposed submitting that "defendants represented to plaintiffs that Lot 335 would not flood or that defendants would remedy any flooding problem experienced by Lot 335."[2] Mr. Stevens initially

---

[2] Mr. Stevens' proposed instruction stated in full:

Your verdict must be for plaintiffs if you believe:

First, defendants represented to plaintiffs that Lot 335 would not flood or that defendants would remedy any flooding problem experienced by Lot 335, and

Second, such representation was made by defendants with the intent that plaintiffs rely on such representation in purchasing Lot 335, and

Third, the representation was false, and

Fourth, defendants made the representation without knowing whether it was true or false, and

Fifth, the representation was material to plaintiffs' decision to purchase Lot 335, and

Sixth, plaintiffs relied on the representation in purchasing Lot 335. and such reliance was reasonable under the circumstances, and

took the position that both of these representations were as to existing facts and that (for the reasons discussed further below) the jury only had to find that Mr. Jones made them without knowledge of their truth or falsity. After objection by defense counsel, however, the trial court determined that both statements concerned future events and required actual knowledge of falsity to prove fraudulent misrepresentation.

Mr. Stevens thereafter argued that even if the representation that "defendants would remedy any flooding problem" concerned future conduct, the representation that the lot "would not flood" was a representation as to an existing fact, requiring only lack of knowledge as to its truth or falsity and, therefore, each representation should be submitted in a separate instruction with a separate level of scienter.[3] Mr. Stevens did not propose to substitute for "would not flood" any alternative wording, such as his testimony at trial that Mr. Jones said "there are no problems" with flooding on the lot.

The trial court again rejected Mr. Stevens' characterization of "would not flood" as a statement of existing fact. Because the trial court continued to believe that this was a representation as to what would occur in the future, it submitted the version of

---

Seventh, as a direct result of such representation, plaintiffs sustained damage.

[3] This suggestion was in accordance with MAI 23.05, Notes on Use, Comment N, which states: "Submission of multiple representations in a single verdict directing instruction may create a problem in determining whether all requisite elements (i.e., falsity, materiality, knowledge, etc.) have been found as to the same representation. A possible approach would be to submit a separate verdict directing instruction as to each alleged misrepresentation, all in a single package with a single damage instruction and a single verdict form."

Paragraph Fourth requiring the jury to find that Mr. Jones knew this representation was false at the time it was made.

The jury, therefore, was instructed:

Your verdict must be for plaintiff Shawn Stevens and against defendant Kirk Jones if you believe:

First, defendant Kirk Jones represented to plaintiff Shawn Stevens that Lot 335 *would not flood and that if it did, defendants would remedy any flooding problem* experienced by Lot 335, and

Second, such representation was made by defendant Kirk Jones with the intent that plaintiff Shawn Stevens rely on such representation in purchasing Lot 335, and

Third, the representation was false, and

Fourth, defendant Kirk Jones *knew that it was false at the time the representation was made*, and

Fifth, the representation was material to plaintiff's decision to purchase Lot 335, and

Sixth, plaintiff Shawn Stevens relied on the representation in purchasing Lot 335, and such reliance was reasonable under the circumstances, and

Seventh, as a direct result of such representation, plaintiff Shawn Stevens sustained damage.

(Emphasis added.) The jury found in favor of Mr. Jones, and the trial court entered judgment accordingly. After a decision by the court of appeals, this Court granted transfer pursuant to article V, section 10 of the Missouri Constitution.

## II.    *STANDARD OF REVIEW*

Whether a jury was instructed properly is a question of law. Questions of law are subject to this Court's de novo review. *Templemire v. W & M Welding, Inc., 433 S.W.3d*

7

*371, 376 (Mo. banc 2014)*. The Court views the evidence in the light most favorable to submission of the instruction. *Edgerton v. Morrison, 280 S.W.3d 62, 65-66 (Mo. banc 2009)*. "To reverse a jury verdict on the ground of instructional error, the party challenging the instruction must show that: (1) the instruction as submitted misled, misdirected, or confused the jury; and (2) prejudice resulted from the instruction." *Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 90-91 (Mo. banc 2010)*.

### III. THE TRIAL COURT PROPERLY INSTRUCTED THE JURY ON FRAUDULENT MISREPRESENTATION AS TO A FUTURE EVENT

The issue before this Court is a narrow one. The parties agree as to the elements of fraudulent misrepresentation. They are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 131-132 (Mo. banc 2010)*.

Mr. Stevens submitted that Mr. Jones had made two fraudulent misrepresentations to him regarding the lot – that it "would not flood" and that if it did flood, he would remedy any flooding problem experienced on the lot. Mr. Jones denied he made any representations as to whether the lot would flood or whether he would resolve any water problems that did arise. Resolution of whether Mr. Jones fraudulently made these representations was an issue for the jury, which it resolved in favor of Mr. Jones.

8

The sole issue on appeal is whether, in considering the claim that Mr. Jones represented that the lot "would not flood," the jury was instructed properly on the level of scienter required. As set out above, the jury was instructed that, to find liability for fraudulent misrepresentation, it had to find that Mr. Jones made a representation that the lot "would not flood" knowing it was false. The question is whether this was the correct standard. Under settled Missouri law, whether the level of scienter submitted was correct depends on whether the representation that the lot "would not flood" is a representation of existing fact or a prediction or promise as to what would happen in the future.

It is well-settled that "[t]he truth or falsity of [a] representation must be determined as of the time it was made and as of the time it was intended to be, and was, relied upon and acted upon." *Renaissance, 322 S.W.3d at 133 (quoting Powers v. Shore, 248 S.W.2d 1, 6 (Mo. banc 1952))*. When an existing fact is misrepresented, "it is not necessary that it be shown that defendant had actual knowledge of the falsity of the facts stated by him" but rather "[i]t is sufficient that he made the representations with the consciousness that he was without knowledge as to their truth or falsity, when, in fact, they were false." *Wilson v. Murch, 354 S.W.2d 332, 338-39 (Mo. App. 1962)*. This is because, by representing that the fact is true when the speaker does not know whether the fact actually is true, the speaker is misrepresenting his knowledge.

By contrast, when the misrepresentation concerns a statement of intent as to future performance or events, the plaintiff must establish that at the time the statement was made the speaker did not intend to perform the act represented. *Renaissance, 322 S.W.3d at 133*. This is because a "state of mind, or intent, is itself an 'existing fact[,'] the

9

misrepresentation of which can constitute fraud." *White v. Mulvania, 575 S.W.2d 184, 188 (Mo. banc 1978)*; *Collins v. Lindsay, 25 S.W.2d 84, 90 (Mo. 1930)* ("A state of mind, an existing purpose, may be misrepresented and thus constitute a misrepresentation of fact").

But if the speaker did not know the future representation was false when it was made, then the representation might be wrong but not fraudulent. This is because "[a]bsent such an inconsistent intent, there is no misrepresentation of fact or state of mind but only a breach of promise or failure to perform." *Renaissance, 322 S.W.3d at 133*; *accord Dillard v. Earnhart, 457 S.W.2d 666, 670 (Mo. 1970)* (to prevail on fraud claim plaintiffs "were required to show that there was no intention to [perform] at the time that the assurance was given"); *Lowther v. Hays, 225 S.W.2d 708, 714 (Mo. 1950)* (representations that are "[m]ere statements of opinion, expectations and predictions for the future are insufficient to authorize a recovery").

The scienter required to be shown for a misrepresentation of a future event is higher than that required to prove misrepresentation of an existing fact. The plaintiff must prove that the defendant actually knew, when making the representation as to a future event or act, that the representation was false.

In accordance with this case law, Paragraph Fourth of MAI 23.05, the verdict director for fraudulent misrepresentation claims, sets out three alternative ways to submit scienter depending on the nature of the misrepresentation alleged. It states:

> Fourth, [defendant knew that it was false] [defendant knew that it was false at the time the representation was made] [defendant made the representation without knowing whether it was true or false][1,] and …

10

The superscript note number in the above paragraph refers the reader to Note on Use 1, which instructs:

> Select the appropriate phrase. The second alternate for Paragraph Third [sic] is required to submit a misrepresentation of a future event. The third alternate is not appropriate for submission of a misrepresentation of a future event. *See Klecker v. Sutton, 523 S.W.2d 558 (Mo. App. 1975), and Wolk v. Churchill, 696 F.2d 621 (8th Cir. 1982).*

*MAI 23.05, Note on Use 1*.

The trial court submitted both alleged misrepresentations "that Lot 335 would not flood" and that "defendants would remedy any flooding problem experienced by Lot 335" using the second alternative, that the defendant "knew that it was false at the time the representation was made" because of its belief that both representations were as to future events. This was not error.

The dictionary definition of "would" supports the trial court's determination. As relevant here, the word "would" in the phrase "defendants represented … that Lot 335 would not flood" appears to be **"**used in an auxiliary function to express wish, desire, or intent**"** or "used in an auxiliary function to express futurity from a point of view in the past." *WEBSTER'S THIRD NEW INT'L DICTIONARY 2637-38 (1993).* Indeed, "would" is the past tense form of the future-signaling word "will" (e.g., I thought I would be late), and it is often used to express a conditional statement (e.g., I would mow the lawn if it would stop raining). *See CHICAGO MANUAL OF STYLE, 5.150 (16th ed. 2010).*

Neither the past nor the conditional formulation supports a reading of "would not flood" as a representation of existing fact. The statement, in this context, most naturally

11

refers to future events; either as a past form of the phrase "will not flood" or as a conditional statement, the truth or falsity of which is contingent on the occurrence or non-occurrence of other events, it would reflect only Mr. Jones' future expectations as of the time of speaking. Moreover, the use of the phrase "would not flood" in a sentence also submitting "and if it did, defendants would remedy any flooding problem" further supports this understanding of the phrase as predictive rather than as stating an existing condition, as "if it did" clearly conditioned the promised remedial measures on the existence of future flooding.

Mr. Stevens says that this is not what he intended by proposing the language "would not flood." He asserts that he meant the phrase as shorthand for the assurance he allegedly received from Mr. Jones that, in effect, the lot was designed and graded such that, as he testified at trial, "[t]here are no problems with water issues on Lot 335." While this may have been his intent, that is not what use of the word "would" means in ordinary parlance. Had Mr. Stevens submitted that he was told "there are no problems" with the lot or that it was designed so as to prevent flooding, then he would have been able to utilize the lesser scienter standard required for representations of existing fact, if a submissible case was made that at the time Mr. Jones allegedly offered these representations he did not know whether the lot had water problems or not.[4] *See, e.g.,*

---

[4] Even if Mr. Stevens had proposed using this language, it is not clear from the record whether there was a basis for finding there already had been problems with water on the lot when Mr. Jones is alleged to have said that "there are no problems" with water on the lot or whether Mr. Jones had a basis for knowledge of the potential for water buildup at that time beyond that which Mr. Stevens admitted was evident to him from the location of the lot in a natural drainage area. *See Doe 1631 v. Quest Diagnostics, Inc., 395 S.W.3d*

*Judy v. Ark. Log Homes, Inc., 923 S.W.2d 409, 420-21 (Mo. App. 1996)* (finding no error in instructing the jury on the lower scienter standard when a builder represented the existing fact that a home was durable, designed to be weather-tight, and built using anti-rot treated logs).

Mr. Stevens, however, submitted that the lot "would not flood or that defendants would remedy any flooding problem experienced by Lot 335." These are both representations as to what would happen if Mr. Stevens purchased the lot. They are statements or predictions as to future events, not statements of existing fact. Assuming such statements or predictions are sufficiently factual to be submissible, they would require proof that Mr. Jones knew they were false when made, as submitted in the instruction given by the trial court. The trial court did not err in its submission of this issue.

## IV. CONCLUSION

The trial court properly instructed the jury that the defendant's alleged representations concerned future events and, therefore, must have been made with actual knowledge of their falsity in order for the plaintiff to recover. The trial court's judgment is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

Breckenridge, Fischer, Draper, Wilson and
Teitelman, JJ., and Mountjoy, Sp.J., concur.
Russell, C.J., not participating.

_____

*8, 15 (Mo. banc 2013)* ("Instructions must be supported by substantial evidence and reasonable inferences to be drawn therefrom").