

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| ANDREW NIEMEIER, | ) | No. ED112584 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 20SL-CC02847 |
| | ) | |
| CHARLES RUSSELL WILLIAMS, III and | ) | Honorable Dean P. Waldemer |
| GREEN PEAK CAPITAL | ) | |
| PARTNERS, LLC, | ) | |
| | ) | |
| Appellants. | ) | Filed: December 24, 2024 |

Russell Williams III ("Owner") and Green Peak Capital Partners, LLC appeal from the circuit court's judgment in Andrew Niemeier's favor on his breach of contract and fraudulent misrepresentation claims. These claims arise from a statement Owner made indicating Niemeier would be made a fifty percent owner of Green Peak. Because the circuit court erred in overruling Green Peak's and Owner's motion for judgment notwithstanding the verdict on the breach of contract claim, its judgment is reversed and the damages award and specific performance is vacated. The circuit court's judgment entered on the fraudulent misrepresentation claim is affirmed.

**Background**

Green Peak was organized as a single-member, manager-managed limited liability company in September 2019. Green Peak is a private equity firm that identifies underperforming companies to invest in or acquire. Owner is Green Peak's member-manager.

Niemeier contacted Owner, seeking advice and employment in the private equity industry. Niemeier knew Owner had extensive experience in the private equity business, and he sought Owner's assistance with an interview for a position with another company. Niemeier and Owner continued to meet after Niemeier did not secure a position with the other company.

Eventually, Niemeier and Owner met with Friend,[1] who was the primary owner of a business ("Company") engaged in infrastructure work. Friend expressed a willingness to sell Company to Green Peak. Friend agreed to sign a nondisclosure agreement and provide financial information to allow Green Peak to evaluate it for acquisition. Niemeier agreed to help Owner evaluate Company while continuing to seek permanent employment.

Owner and Niemeier discussed entering into a strategic alliance agreement in which the two men would work together to procure Company. That proposed agreement would have made Niemeier an independent contractor and a collaborator in Company's acquisition. Owner provided Niemeier a draft "Strategic Alliance Agreement," but Niemeier never signed this agreement.

On November 18, 2019, Niemeier called Owner to discuss the next steps in acquiring Company. Niemeier told Owner the acquisition would not move forward unless there was an agreement that Niemeier would be a fifty percent owner in Green Peak. Niemeier testified

---

[1] All names of witnesses have been omitted in accordance with § 509.520, RSMo Supp. 2023.

Owner stated, "okay," and their call ended.[2] Niemeier testified he knew that he and Owner needed to meet in person to reach an agreement regarding Green Peak.

Two days later, Owner presented Niemeier with a draft "Partnership Agreement" that contemplated Niemeier acquiring a ten percent ownership stake in Green Peak. Niemeier informed Owner some of the provisions were not correct and, because Green Peak was a limited liability company, a separate operating agreement would be necessary. Throughout February and March 2020, Niemeier and Owner continued discussing Niemeier's ownership in Green Peak. In email correspondence from March 2020, Owner acknowledged agreeing to share the transaction and management fees from the pending acquisition with Niemeier, but stated that Owner continued to be the sole owner of Green Peak. In that same correspondence, Owner stated that he remained interested in letting Niemeier take an ownership interest in Green Peak, but that he would require a buy-in for the opportunity. Niemeier responded that they would need to discuss where to go from this point. Also in March, Niemier and Owner met to discuss the Partnership Agreement that Owner sent back in November 2019. Niemeier brought a draft of that agreement with him containing notes and proposed modifications. Both men indicated they would ask their attorneys to draft additional documents and acknowledged the need for an updated operating agreement. Owner then told Niemeier the draft operating agreement would be handled after Company's acquisition closed. No final written agreement ever materialized.

Meanwhile, Niemeier and Owner continued working together to acquire Company. At various meetings with Friend and other investors, Owner referred to Niemeier as his partner. When they executed the closing for Company, Owner signed as "Managing Partner" of Green

---

[2] Owner testified this conversation never happened.

Peak and Niemeier signed as "Authorized Representative" or "Managing Director." Once the acquisition was complete, Owner paid Niemeier for his work to help complete the deal.

After completion of the acquisition, Niemeier emailed Owner regarding the need to update Green Peak's operating agreement and determine the valuation for his thirty percent ownership stake. Owner indicated his attorney still was working on the documents and determining the valuation. Niemeier then asserted he had a fifty percent stake in Green Peak. Owner disagreed and told him to wait for the documents. Niemeier then received a draft employment agreement.

Niemeier filed suit against Owner and Green Peak, claiming they breached an oral contract and fraudulently misrepresented that he would be a fifty percent owner of Green Peak. Niemeier sought damages and equitable relief. Owner and Green Peak counterclaimed against Niemeier for abuse of process.

A jury returned a verdict in Niemeier's favor on the breach of contract, fraudulent misrepresentation, and abuse of process claims. The circuit court determined, in addition to the damages awarded by the jury, Niemeier was entitled to specific performance of the contract and awarded him fifty percent ownership of Green Peak. Owner filed a motion for directed verdict and judgment notwithstanding the verdict, which was overruled. Owner appeals.

**Standard of Review**

"The standards of review for a circuit court's overruling of a motion for directed verdict and JNOV are essentially the same." *Brock v. Dunne*, 637 S.W.3d 22, 26 (Mo. banc 2021). "This Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 477 (Mo. banc 2021) (quoting *Robinson v. Langenbach*, 599 S.W.3d 167, 176 (Mo. banc 2020)).

4

Evidence is viewed in the light most favorable to the jury's verdict. *Laughlin v. Perry*, 604 S.W.3d 621, 625 (Mo. banc 2020). "A jury verdict cannot be reversed because of insufficient evidence unless 'there is a complete absence of probative fact to support the jury's conclusion.'" *Allen v. 32nd Jud. Cir.*, 638 S.W.3d 880, 887-88 (Mo. banc 2022) (quoting *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 654 (Mo. banc 2019)).

**Analysis**

*Breach of Contract*

Owner raises two claims that the circuit court erred in overruling his motion for directed verdict and JNOV in that there was not a submissible case for breach of contract. Owner claims there was no mutuality of agreement to support a contract and no written consent as required by § 347.113.2, RSMo 2016,[3] to admit Niemeier as a limited liability company member.

"To make a submissible case for a breach of contract claim, a party must allege and prove (1) mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of contract." *Siebert v. Peoples Bank*, 632 S.W.3d 461, 468 (Mo. App. 2021) (quoting *Fidelity Nat'l Ins. Co. v. Tri-Lakes Title Co., Inc.*, 968 S.W.2d 727, 730 (Mo. App. 1998).

"The essential elements of a contract are: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation." *STL Riverview Plaza LLC v. Metro. St. Louis Sewer Dist.*, 681 S.W.3d 290, 300 (Mo. App. 2023). Mutuality of agreement is determined by looking to the intentions of the parties, as expressed or manifested in their words or acts. *Id.* "If the parties have reserved the

---

[3] All statutory references are to RSMo 2016, unless otherwise indicated.

essential terms of the contract for future determination, there can be no valid agreement." *Dancin Dev., L.L.C. v. NRT Mo., Inc.*, 291 S.W.3d 739, 745 (Mo. App. 2009) (quoting *Harrell v. Mercy Health Services Corp.*, 229 S.W.3d 614, 619 (Mo. App. 2007).

Niemeier's trial testimony demonstrates there never was a mutual agreement to form the basis of a contract. At best, the evidence shows that Niemeier and Owner agreed to begin negotiating a deal for a fifty percent ownership in Green Peak. Up until November 2019, the two men had discussed the nature of Niemeier's involvement in the business. Several different interests were discussed, including a strategic alliance agreement, but no agreement was reached.

Niemeier testified that he believed he became a member of Green Peak on November 18, 2019, when Owner agreed to his demand. But the evidence of the parties' conduct after this phone call leads to the inescapable conclusion that no deal had been formalized. Niemeier clarified that during their telephone call, Owner agreed Niemeier could be a member of Green Peak, but they did not discuss any other terms related to Green Peak's management. Niemeier testified that he knew he and Owner needed to work together to determine their obligations and responsibilities and any agreement needed to be reflected in an operating agreement. This understanding is supported by the negotiations surrounding the Partnership Agreement that Owner sent to Niemeier two days after the November 18 conversation. Niemeier testified that as late as April 2020, they continued to work on the terms of their agreement by discussing exchanging drafts of the operating agreement for Green Peak. Additionally, Niemeier admitted he and Owner never had an explicit conversation about who ultimately had the decision-making responsibility for Green Peak.

The only time Niemeier and Owner agreed on anything was on the November telephone call. After that call, they never agreed or finalized anything regarding Green Peak's ownership,

6

management, or any other terms of their agreement. Further, testimony and exhibits indicate they disagreed about the percentage of Niemeier's membership and capital contribution to Green Peak.

Niemeier's testimony and exhibits demonstrate a complete absence of substantial evidence from which a reasonable juror could find that Niemeier and Owner agreed to the material terms of the alleged transaction. The circuit court erred in submitting the breach of contract claim to the jury and, accordingly, the jury verdict must be reversed.

*Specific Performance*

Owner also argues the circuit court's issuance of specific performance was incorrect because there was an adequate remedy at law and there was no contract.

In certain cases, a breach of contract may result in both "an action at law for damages for the breach" as well as "a suit in equity for the specific performance of the contract." *Payne v. Cunningham*, 549 S.W.3d 43, 50 (Mo. App. 2018) (quoting *Magruder v. Pauley*, 411 S.W.3d 323, 331 (Mo. App. 2013)). "The equitable remedy of specific performance is available only where a valid contract is in existence between the parties in terms sufficiently definite to enable the [circuit] court to decree its performance." *Gee v. Payne*, 939 S.W.2d 383, 388 (Mo. App. 1997) (quoting *Quality Wig Co., Inc. v. J.C. Nichols Co., Inc.*, 728 S.W.2d 611, 616-17 (Mo. App. 1987)). "The court cannot make a contract for the parties and if the agreement sought to be enforced is indefinite, specific performance may not be decreed." *Quality Wig Co.*, 728 S.W.2d at 617.

There was not a submissible case for a breach of contract because there never was an agreement between Niemeier and Owner regarding the material terms. Accordingly, the circuit

court erred in awarding Niemeier a fifty percent ownership in Green Peak. The circuit court's award of specific performance is reversed.

*Fraudulent Misrepresentation*

Next, Owner argues that the circuit court erred in overruling his motion for directed verdict and JNOV because Niemeier failed to make a submissible case for fraudulent misrepresentation. Owner argues there was no substantial evidence of: (1) an actionable false and material misrepresentation; (2) reliance on the alleged false and material misrepresentation; and (3) intent to perform at the time the alleged false and material misrepresentation was made.

To prove liability for fraudulent misrepresentation, a party must demonstrate:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 880 (Mo. banc 2015) (quoting *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. banc 2010)).

*1. False and material misrepresentation*

As submitted to the jury, Owner represented to Niemeier that he would be a fifty percent owner of Green Peak. Owner claims there was insufficient evidence to demonstrate fraudulent misrepresentation because the representation was not "an actionable false and material misrepresentation." Owner asserts that a mere statement of opinion, expectation, or a future prediction is insufficient as a matter of law and precludes recovery.

"To constitute fraud, the alleged misrepresentation must relate to a past or existing fact." *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 940 (Mo. App. 1996). A statement of opinion, expectation, or a future prediction is insufficient for fraudulent

8

misrepresentation recovery because that statement necessarily is indefinite and uncertain. *Dancin Dev*, 291 S.W.3d at 744. "In particular, predictions and projections regarding the future profitability of a business or investment cannot form a basis for fraud as a matter of law." *Id.* (quoting *Arnold v. Erkmann*, 934 S.W.2d 621, 627 (Mo. App. 1996)).

Owner's representation that Niemeier would be a fifty percent owner was not an opinion, expectation, or a future prediction. This was a fact that could be readily identified; determination of Niemeier's interest did not depend on a future contingency. Owner represented Niemeier would be an owner; there was no promise as to Green Peak's future performance or profitability.

*2. Reliance*

Owner argues that Niemeier did not reasonably rely upon the statement that he would be made a fifty percent owner. "The test of whether an individual reasonably relied upon a misrepresentation 'is simply whether the representation was a material factor influencing final action.'" *Pecos I, LLC v. Meyer*, 655 S.W.3d 579, 593 (Mo. App. 2022) (quoting *Stein v. Novus Equities Co.*, 284 S.W.3d 597, 603 (Mo. App. 2009)). "Generally, whether a party has justifiably relied on a misrepresentation is an issue of fact for the jury to decide." *Renaissance Leasing*, 322 S.W.3d at 132.

Niemeier testified that he relied upon Owner's representation that he would be a fifty percent owner of Green Peak and completed Company's acquisition based on that representation. Niemeier only worked on Company's acquisition based upon his reliance on this representation. Niemeier also testified that he believed he and Owner would finalize the details of his ownership after Company's acquisition. There was evidence from which the jury could determine Niemeier reasonably relied on Owner's representation.

*3. Intent*

9

Owner argues there was no evidence at trial that Owner did not intend to perform the agreement to make Niemeier a fifty percent owner. "When a fraud claim is based on a statement of intent, the plaintiff establishes falsity by showing that when the statement was made, the speaker did not intend to perform consistently with the statement." *Renaissance Leasing*, 322 S.W.3d at 133. Merely failing to perform does not establish intent. *Id*. The determination of the intent of a representation is a factual determination for the jury. *Keystone Mut. Ins. Co. v. Kuntz*, 507 S.W.3d 162, 167-68 (Mo. App. 2016).

Niemeier presented evidence demonstrating that Owner never intended for him to become a fifty percent owner in Green Peak. Owner consistently delayed discussion about the terms of Niemeier's Green Peak ownership until after Green Peak acquired Company. Owner then provided Niemeier various legal documents, but none of those documents indicated he would be a fifty percent owner. There was evidence from which the jury could determine that Owner never intended to give Niemeier a fifty percent ownership in Green Peak at the time he agreed to sharing Green Peak with Niemeier.

In sum, there was sufficient evidence for the jury to believe that Owner offered Niemeier to become a Green Peak owner, Niemeier acted based upon that representation, and Owner and Green Peak did not intend for Niemeier to become a fifty percent owner. The circuit court did not err in overruling Owner and Green Peak's motion for JNOV for fraudulent misrepresentation.

*Damage Awards*

Owner claims the circuit court plainly erred in entering judgment following the jury's verdict and awarding Niemeier damages for breach of contract and fraudulent misrepresentation. Owner argues these damages were duplicative and should have been merged.

10

This point is rendered moot. Because there was not a submissible case for a breach of contract claim, the judgment's award of damages for breach of contract is vacated. Niemeier may not recover those damages. There is not a duplicative award.

## Conclusion

The circuit court's judgment for breach of contract and specific performance are reversed, and the damages awarded for breach of contract are vacated. In all other respects, the circuit court's judgment is affirmed.

_____
John P. Torbitzky, P.J.

Robert M. Clayton III, J., and
Michael S. Wright, J., concur.